IN RE LINDEN: Habeas Corpus.

*December 17, 1901 — January 7, 1902.*

*Constitutional law: Transfer from reformatory to state prison: Judicial power: Construction of statutes: Independent enactment.*

1. Sec. 4944*f*, Stats. 1898, as amended by ch. 28, Laws of 1899, provides that with the approval of the governor any inmate of the reformatory belonging to a certain class, whose continued presence there is considered detrimental to the other inmates, may be transferred by the board of control to the state prison, and his original term of imprisonment shall be continued therein. *Held*, that such pro-

vision is not an essential or integral and interdependent part of the general statute relating to indeterminate sentences and reformatory treatment, and its validity may be determined independently of the latter.

2. Such a decision does not take from the courts or confer upon administrative officers any judicial power which, by sec. 2, art. VII, Const., is vested in the courts; and the courts will not review or disturb the acts of state officers in making such a transfer unless it is shown that they have so perverted the law as to make its exercise invasive of the courts' field or subversive of constitutional guaranties.

HABEAS CORPUS to the warden of the state prison. *Prisoner remanded.*

A writ of *habeas corpus* to the warden of the state prison at Waupun, in response to which the petitioner is produced before us. By the petition, confirmed by the return, it is made to appear that he was convicted of burglary, and on the 5th day of December, 1899, sentenced to the state reformatory at Green Bay for a term of from one to five years, in accordance with secs. 4944a, 4944c, Stats. 1898, as amended by ch. 28, Laws of 1899, and that on January 15, 1900, he was, by order of the state board of control, with the approval of the governor, transferred to the state prison at Waupun, in pursuance of the authority conferred by sec. 4944f, Stats. 1898, as amended by same act, and at the time of the issue of the writ was confined at said latter institution by virtue of said sentence and order.

For the petitioner there was a brief by *Earl P. Finch,* and oral argument by *Archibald McPhail.*

For the respondent there was a brief by the *Attorney General,* and oral argument by *R. F. Hamilton,* second assistant attorney general.

DODGE, J. The only complaint made by the petitioner is that his confinement in the state prison at Waupun is illegal, for the reason that under his sentence he has a right to be

imprisoned only at the reformatory at Green Bay, and that
the statute (sec. 4944*f*) is unconstitutional, as vesting judi-
cial power in the state board of control and in the governor
contrary to sec. 2, art. VII of the constitution, which pro-
vides:

" The judicial power of this state, both as to matters of
law and equity, shall be vested in a supreme court, circuit
courts, courts of probate, and in justices of the peace."

Sec. 4944*f*, as amended by ch. 28, Laws of 1899, provides:

"With the approval of the governor any inmate of the
reformatory belonging to class one whose continued pres-
ence there is considered detrimental to the other inmates,
may be transferred by the board to the state prison, and
his original term of imprisonment shall be continued therein.
Convicts in the state prison belonging to class one as afore-
said and in any county jail belonging to class two may, with
like executive approval, be transferred from any of those
institutions to the reformatory and may be returned to the
institution from which they were respectively taken."

It has been held in Illinois, upon reasoning which seems
to us cogent, that a similar section, conferring authority
upon the executive for the transfer of prisoners from one
penal institution to another, is not an essential or integral
and interdependent part of the general statute with refer-
ence to indeterminate sentences and reformatory treatment
of convicts, but may stand or fall independently of the rest
of the act. *People v. State Reformatory*, 148 Ill. 420, 425.
We see no reason to disagree with that view. The state
legislature, having seen fit to establish different places and
institutions for imprisonment, can define the classes of pris-
oners to be confined in either, can prescribe the term and
manner of their confinement, and those details of discipline
and the like necessarily incident thereto, wholly without
regard to whether or not they shall authorize indeterminate
sentences with their usual parole privileges and the like.
We therefore deem it unnecessary to consider other ques-
tions than that raised by the petitioner; namely, whether,

by the section quoted, judicial power is so vested otherwise than in courts that the enactment, viewed as an independent one, must be held void.

The petitioner does not make it very apparent in what respect he claims the constitutional delegation of judicial power to the courts is infringed by the provision in question. It cannot be because certain executive officers are required to act in a judicial manner, in that they must investigate and determine facts and construe the law applicable thereto. Such duties are uniformly cast upon executive officers, and do not confer upon them judicial power such as is exclusively delegated to courts. *State ex rel. Ellis v. Thorne, ante,* p. 81.

The counsel cites to us, presumably as supporting his position, *Mills v. Charleton,* 29 Wis. 400, and *Oliver v. McClure,* 28 Ark. 555, but those relate, not to a delegation of judicial power, but to legislation after the entry of a judgment and the consequent vesting of private rights, which modifies or takes away some of the rights so vested. The principle of those cases, of course, has no application whatever to legislation which precedes a judgment and in coordination with which it is entered.

The validity of legislation generally similar to that before us has been sustained in many states. A few of the more direct cases may be mentioned. In *Petition of Cassidy,* 13 R. I. 143, an entirely similar statute was under consideration. The court said:

"The second ground is that the statute authorizing the removal is unconstitutional, because it confers judicial powers on the board of state charities and corrections, and enables them even to alter the sentence of the court. We think this ground is also untenable. The statute was enacted before the sentence was pronounced, and the sentence must therefore be held to have been pronounced subject to its provisions. And the power given to the board is, in our opinion, simply disciplinary, and not in the constitutional sense of the word judicial."

In *Rich v. Chamberlain*, 104 Mich. 436, the subject is discussed at length, both as to the power of the legislature over the manner in which sentences should be executed, and the character of the power vested in executive officers by a statute such as that under consideration. It was there said:

" The legislature has full authority to provide prisons, and to determine where prisoners may be sent; and the courts have no discretion as to the place to which criminals may be sentenced, except as the legislature gives it. Such discretion is lodged in the circuit judges, and they act judicially in its exercise. But this doctrine is a qualified one, or rather the order of the judge is qualified by the law and such rules and regulations of the prisons as may have been lawfully adopted. Every sentence is subject to these, although it does not mention them. . . . The judge and the prisoner act with knowledge of this fact, and must be presumed to understand that, while the judge may or may not sentence a prisoner to one or another institution, there is an existing law under which he may be lawfully transferred. The sentence impliedly subjects him to this when, in the discretion of the proper executive officer or board, crowded prisons or any other reasons require or make it advisable."

The court then points out the similarity of laws which authorize prisoners sentenced to solitary imprisonment at hard labor to be enlarged, or to be employed in factories or mines, or upon highways, outside of the prison, and closes the subject:

" The sentence, construed by the law, is to the designated prison, but subject to transfer in accordance to law."

In *State ex rel. Att'y Gen. v. Peters*, 43 Ohio St. 629, the court considered a comprehensive statute authorizing very wide discretion as to treatment of prisoners, and applicable as well to existing sentences as to prospective ones, which it held neither was in excess of legislative control over judgments, nor a conferring of judicial power upon executive officers. Of a section authorizing a board to modify the sentence of the court to solitary confinement when necessary on account of health, and to transfer insane convicts to another institution, the court said:

"It cannot seriously be contended that this is an interference with the judicial functions of the court, but is rather the exercise of that guardianship and power of discipline which is vested in the state, to be exercised through the legislative department, for the safe-keeping, proper punishment, and welfare of the prisoner."

In *In re Kline*, 6 Ohio C. C. 215, a statute placing the time and manner of custody of a prisoner sentenced for life as an habitual criminal in the discretion of a certain board was discussed and held not invasive of the court's judicial function.

In *Re Hartwell*, 1 Low. 536, the petitioner had been sentenced by a United States court to be " confined in our state's jail at Lenox in the county of Berkshire." The legislature of Massachusetts caused the jail for the county of Berkshire to be removed from Lenox to Pittsfield in the same county, and the petitioner sought enlargement from custody there. The court held that the sentence, once pronounced, was incapable of change by the court, but that the execution of it, at least to the extent of meeting the situation there presented, was in the control of other branches of the government, and illustrated the necessity of such view by the possibility of destruction of penal institutions, the changes of situation which might make the literal execution of the sentence impossible, or for other reasons. The petitioner was held properly incarcerated in the jail at Pittsfield under a sentence to the jail at Lenox.

In *Miller v. State*, 149 Ind. 607, 623, the court, discussing the indeterminate sentence and power in executive officers to enlarge the prisoner, held that the sentence was to be construed, in the view of the law, as one for the entire maximum term, subject to the contingency that the administrative officers should, in their discretion under the law, shorten the term of service, and said:

"The power to do this is not judicial power, but is a purely ministerial or administrative power. It is no more

the exercise of the judicial power than the power of the governor to 'grant reprieves, commutations, and pardons, after conviction.'"

The court further said that it was the same kind of power as that conferred by the law authorizing credits on the term for good conduct.

It is, perhaps, unnecessary to quote further. The views expressed in these cases are adopted as sound in *George v. People*, 167 Ill. 447; *Opinion of Justices*, 13 Gray, 618; *Conlon's Case*, 148 Mass. 168; *Comm. v. Brown*, 167 Mass. 144.

The only case to the contrary which has come to our notice is *Comm. ex rel. Johnson v. Halloway*, 42 Pa. St. 446, where a law providing deductions for good conduct was held void as applied to a pre-existing sentence, and also as being too complicated for enforcement. The court, however, declared it unconstitutional as to a subsequent sentence, as invading the judicial power, saying:

"The court could not have taken the act into account in measuring the sentence, because they could not know how many days of abatement the prisoner would earn. They could fix his sentence only by the exercise of that judicial discretion which the constitution has vested in the judiciary."

The reasoning of this case was repudiated in *State v. Peters*, *supra*, 43 Ohio St. 629, and it does not seem to us that the assertion is well founded. On the contrary, it seems plain that the court might well have taken into account the probability of good-time allowance, which is rendered reasonably certain by such statutes, and have measured the sentence pronounced accordingly.

The subject has had no discussion in Wisconsin, though it was referred to with reference to the good-conduct law in *Baker v. State*, 88 Wis. 140, 157, which, presumably on the authority of *Comm. ex rel. Johnson v. Halloway*, *supra*, was said to be of doubtful validity.

In the light of this array of authority, although we do not

adopt all that is said in some of the cases, we are con-
strained to the conclusion that the particular provision now
assailed does not take from the courts, nor vest in adminis-
trative officers, a judicial power, in the sense in which that
expression is used in the constitution.   In the nature of
things there must be disciplinary power exercised by those
who execute the sentence of the court, and certainly, where
those powers are declared by legislation in advance, the
court's judgment must be deemed to be framed in contem-
plation thereof.   Doubtless this field of legislation has its
limits.   For example, it would not be permissible to vest
elsewhere than in the courts the authority to adjudge what
the sentence should be, even after a formal judicial convic-
tion.   On the other hand, the extent to which solitary con-
finement denounced by the court may be mitigated in
deference to the health of the convict, or in which solitary
imprisonment not denounced by the court may be added as
discipline for ill conduct while in prison, cannot well be
vested otherwise than in those officers who, in detail, are to
have the care, custody, and control of the prisoner.   Again,
the separation and segregation of prisoners, so that an ob-
noxious or pernicious one shall not unduly corrupt or disturb
the conduct of the others, is within the field where the or-
dinary procedure and judicial attitude of the court is un-
necessary, and from which cannot be excluded the executive
officers.   Again, the reasoning of some of the above cited
cases is irresistible upon the propriety of power in the leg-
islature, or those to whom it may delegate it, over the loca-
tion of prisons and the circumstances under which prisoners
confined in one may be transferred to another.   Absence
of that power would make it impossible to meet uncontrol-
lable physical changes of conditions.

When, therefore, the legislature is fairly and in good faith
within these fields, it cannot be said to curtail or divert ju-
dicial power from the courts.   We have had in this state,

In re Linden, 112 Wis. 523.

from its earliest times, a multitude of regulations, the propriety of which has not been questioned, except in the instance above referred to in *Baker v. State*. They are illustrative of those things which are ordinarily deemed proper for delegation to executive and administrative officers. Those now existing are largely contained in secs. 4915–4929, Stats. 1898, dating from 1873. There we find that prisoners are to be governed by the warden in the manner prescribed by law, the rules and regulations of the prison, and in conformity to the sentence (sec. 4915); that convicts sentenced to the state prison may be employed outside of the prison yard (sec. 4927); that good-time allowances may be made and convicts discharged before the end of their terms (sec. 4928); that the board may exempt from solitary confinement prescribed by a sentence, for good conduct (sec. 4929); and also that the board may transfer insane prisoners, with the approval of the governor, to hospitals for the insane (sec. 4944). Turning then to the section now assailed, sec. 4944$f$, as amended, the act authorized is that of transfer from one penal institution to another, which, if upon proper grounds, is, as above stated, permissible to the legislature. It is authorized not in absolute discretion, but when the continuance of the convict at the reformatory is considered detrimental to the other inmates. It is thus confined strictly to a purpose of prison discipline, also a field not necessarily confided to the judiciary. We are therefore constrained to the conclusion that the legislation, as such, is proper, and if executed in accordance with its purpose neither takes from the courts nor confers upon the board of control and governor those judicial powers which, under the constitution, must be confined to the former. Should the executive officers so pervert the law as to make its exercise invasive of the courts' field or subversive of the constitutional guaranty against deprivation of liberty without due process of law, it may well be that their action could be reviewed and cor-

rected by the courts; but of that nothing is alleged or presented in the present case.

Our conclusion is that the law is valid, and that, no showing being made of any impropriety in its execution, the jurisdiction exists in the board and governor to transfer the petitioner to the state prison at Waupun, and that he is now held by the respondent, the warden, under the sentence of the circuit court for Fond du Lac county and the duly approved order of said board; which are a sufficient justification for his retention.

*By the Court.*— The petitioner is remanded to the warden of the state prison, to hold as before the writ issued.