*Ex parte* WILLIAM RIDLEY.

No. A-328. Opinion Filed January 11, 1910.

(106 Pac. 549.)

1.     PARDON—"Parole"—Definition. A "parole," as the term is used in criminal law, may be defined as the release of a convict from imprisonment upon certain conditions to be observed by him, and a suspension of his sentence during his liberty thus granted.

2.     PARDON—Parole—Power to Grant—Exclusive Authority of Governor—Revocation. Under the constitutional provision confer-

ring the pardoning power upon the Governor (Const. art. 6. sec. 10), the Governor has exclusive power to parole a convict, with such restrictions and limitations as he may deem proper. and upon a violation by such convict of the terms and conditions of his parole, the Governor has power to revoke his parole, and direct that such convict be rearrested and returned to custody, and required to serve out the unexpired part of the sentence of the court, as though no parole had been granted, even after the time his sentence would have ended but for the suspension thereof by the parole.

3. **CONSTITUTIONAL LAW—Due Process. of Law—Revocation of Parole.** An executive order, revoking a parole for violating a condition thereof, and directing the rearrest and return to custody of the convict, is not violative of the constitutional guaranty "that no person shall be deprived of his liberty without due process of law," and "that no warrant shall issue but upon probable cause, supported by oath or affirmation," since being a convict at large by executive clemency, which he has accepted on conditions included therein, the convict, upon violation of such conditions, is merely an escaped convct, and not entitled to invoke such constitutional guaranty.

4. **HABEAS CORPUS—Parole Convict—Rearrest.** When a convict has been released upon a parole, and where said parole has been revoked by order of the Governor for violation of the conditions thereof, in the absence of a statute or of an express provision of the parole providing for a hearing, the convict is entitled to a hearing on **habeas corpus,** before the Criminal Court of Appeals, or the district court of the county where he is held, in order that he may show, if he can, that he has performed the conditions of the parole, or that he has a legal excuse for having not done so, or that he is not the same person who was convicted.

5. **CONSTITUTIONAL LAW — Pardoning Power — Limitation— Statutes—Board of Pardons.** Under section 10, art. 6, of the Constitution, the pardoning power is vested exclusively in the Governor of the state, and any law which restricted this power would be unconstitutional and void. Held, that article 26. c. 89, Snyder's Comp. St. 1909, being chapter 62, p. 576, Sess. Law 1907-1908, entitled "An act relating to the granting of pardons; creating a board of pardons and defining its duties," in conferring pardoning powers upon other state officers, and restricting the Governor in the exercise of the pardoning power, is an unconstitutional infringement and interference upon the executive power. The Constitution only vests in the Legislature the power to provide by law regulations relative to the manner of applying for pardons.

6. **CONSTITUTIONAL LAW—Pardoning Power — Infringement— Deduction of Time for Good Behavior.** The law giving to prisoners certain deductions from their term of imprisonment for

Statement of Facts.

good behavior is not unconstitutional as an infringement of the prerogative of the Governor to pardon. It does not restrict or interfere with this power in any way. It simply fixes the term of imprisonment in certain cases and upon certain conditions, and thus enters into and becomes a part of the judgment and sentence of the court.

(Syllabus by the Court.)

Application by William Ridley for writ of *habeas corpus* alleging that relator was illegally restrained of his liberty by W. M. Cates, Sheriff of Stephens County. Writ denied, and petitioner remanded.

Writ heard on agreed statements of facts as follows:

"Agreed Statements of Facts.

"It is agreed by and betweeen the petitioner, William Ridley, by his counsel, E. E. Morris, and the respondent by Charles L. Moore, Assistant Attorney General of Oklahoma, that the petitioner, William Ridley, was convicted in the district court of Comanche county, territory of Oklahoma, on the 22d day of November, 1904, for the crime of manslaughter, and sentenced to a term of four years in the penitentiary of the territory of Oklahoma, then located at Lansing, in the state of Kansas; that he was sentenced and began his term on July 11, 1905; that said William Ridley served in said penitentiary in pursuance of said sentence until the 8th day of February, 1908, at which time he was paroled by Governor Charles N. Haskell, Governor of the state of Oklahoma. A copy of said parole is hereto attached, marked 'Exhibit A,' and made a part of this agreement.

"It is further agreed that the original term of the sentence of four years expired on July 11, 1909, but, with the credit for good time allowed the petitioner under the law, said sentence expired on November 8, 1908.

"It is further agreed that on August 30, 1909, the said Charles N. Haskell, Governor, as aforesaid, summarily, and without notice to petitioner, or without any hearing, revoked said parole, and ordered and had issued his warrant of arrest, commanding the peace officers of the state to arrest the petitioner and confine him in the penitentiary of the state of Oklahoma to serve out the remaining portion of the said sentence as aforesaid.

"That in pursuance of said executive order, W. M. Cates, Sheriff of Stephens county, Okla., arrested the said petitioner, and he is now in the custody of said sheriff in the said county.

A copy of said revocation or executive order is hereto attached, marked 'Exhibit B,' and made a part of this agreement.

"It is further agreed since the issuing of the said parole that the said petitioner has not been convicted of the violation of any of the criminal laws of the state of Oklahoma, but it is agreed that said Ridley is now charged with the crime of selling liquor in the county court of Stephens county, Okla., but that said offense is alleged to have occurred on July 17, 1909.

"It is further agreed that petitioner made regular monthly reports to the Governor, as aforesaid, up until the date said original sentence would have expired by allowence to petitioner credit for good time.

"E. E. MORRIS,
"Attorney for Petitioner.
"CHAS. L. MOORE,
"Assistant Attorney General.

"Revocation of Parole.
"State of Oklahoma, Executive Department.

"Whereas, one Will Ridley was convicted in the district court of Comanche county, Oklahoma Territory, of the crime of manslaughter in the second degree and was on the eleventh day of July, A. D. 1905, sentenced to a term of four years in the territorial prison and was thereafter confined in said prison under said sentence until on or about the eighth day of February, 1908, upon which last-named day the undersigned Governor of the state of Oklahoma granted a parole to said Ridley upon the express conditions therein set forth as follows, to wit:

"First. That the said Will Ridley shall immediately go to the home of his wife, in Duncan, Stephens county, Oklahoma, and there remain as a dutiful husband during the remainder of said sentence.

"Second. That the said Will Ridley shall report in writing to the Governor of the state of Oklahoma, every thirty days after the signing of this parole, during the remainder of said sentence and that the said Will Ridley will abstain from the use of intoxicating liquors, and to remain away from all places where intoxicating liquors are sold and places where gambling is carried on, and will avoid all evil associations; that he will respect the laws of the state of Oklahoma, and conduct himself in all respects as an upright citizen.

"And whereas, it has been made to appear to the undersigned

3 Cr.—23

Governor of the state of Oklahoma that said Will Ridlev has vio-- lated the terms and conditions of said parole in this, to wit, that he has not conducted himself as an upright citizen; that he has not remained away from illicit places and questionable resorts and places where intoxicating liquors were sold as by the terms of his parole he was required to do, but that on the contrary he has engaged in the unlawful sale of intoxicating liquors and has otherwise violated the terms of said parole:

"Now therefore, in consideration of the premises and by vir- tue of the authority in me vested, I, C. N. Haskell, Governor of the state of Oklahoma, do hereby annul, cancel and revoke the said parole granted to the said Will Ridley and hereby order and di- rect all sheriffs and other police officers of the state of Oklahoma to apprehend the said Will Ridley wherever he may be found and to take him into safe custody and to conduct him to the warden of the penitentiary at McAlester and the said warden of the peni- tentiary is hereby ordered and directed to receive said Will Rid- ley and confine him for that portion of said term which was un- expired at the date of said parole, in accordance with the terms of the original judgment and sentence of said court, a certified copy of which is hereto attached.

"In testimony, I have hereunto set my hand and caused the great seal of the state of Oklahoma to be hereto affixed this thirtieth day of August in the year of our Lord, one thousand nine hundred and nine and of the independence of the United States of America the one hundred and thirty-third.

"[Seal.]                              C. N. HASKELL,
                        "Governor of the State of Oklahoma.
"Attest:
    "BILL CROSS, Secretary of State."

The cause was submitted on briefs December 22, 1909.

E. E. Morris, for petitioner.—Citing: Ex parte Prout, 12 Idaho, 494, and State v. Horne, 52 Fla. 125.

Charles West, Atty. Gen., and Charles L. Moore, Asst. Atty. Gen., for the state. No copy of brief reached the reporter.

DOYLE, JUDGE. The proposition presented involves the power of the Governor to grant parols and to revoke paroles upon a violation of the conditions thereof, after the expiration of the period of time designated in the sentence of imprisonment. Our Constitution confers on the Governor the power to grant, after

conviction, paroles and pardons. Section 10, art. 6, of the Constitution is as follows:

"The Governor shall have power to grant, after conviction, reprieves, commutation, paroles, and pardons for all offenses, except cases of impeachment, upon such conditions and with such restrictions and limitations as he may deem proper, subject to such regulations as may be prescribed by law. He shall communicate to the Legislature, at each regular session, each case of reprieve, commutation, parole, or pardon, granted, stating the name of the convict, the crime of which he was convicted, the date and place of conviction and the date of commutation, pardon, parole, or reprieve."

The First Legislature passed an act creating a board of pardons, defining its duties. Chapter 62, p. 576, Sess. Laws 1907-1908, the same being article 26, c. 89, Snyder's Comp. St. 1909. This board consists of the State Superintendent of Public Instruction, the President of the Board of Agriculture, and the State Auditor. Its duties are to hold regular meetings at the office of the Secretary of State, on the second Monday of each month, and such special meetings as the president or any two members may direct, and to receive applications for pardons or commutation of punishment, fix a date for the hearings, and cause a copy of the order to be published, and within 20 days after the hearing of any case to file with the Secretary of State its decision in writing and transmit a copy of said decision to the Governor. The act further provides that:

"No pardons, nor paroles shall be granted by the Governor until he shall present the matter to and obtain the advice of the Board of Pardons and Parole, but he may commute death sentence of persons to imprisonment for life."

Under our Constitution the pardoning power is vested exclusively in the Governor of the state, and any law which restricted this power would be unconstitutional and void. The co-ordinate departments of the government have nothing to do with the pardoning power, except that the Legislature may by law provide how applications may be made, and is entitled to a report at each regular session of the action taken. *People v. Brown*, 54 Mich. 15, 19 N. W. 571; *People v. Moore*, 62 Mich. 496, 29 N. W. 80;

*People v. Cummings,* 88 Mich. 249, 50 N. W. 310, 14 L. R. A. 285; *U. S. v. Wilson,* 7 Pet. 150, 8 L. Ed. 640; *Ex parte Wells,* 18 How. 307, 15 L. Ed. 421; *Ex parte Garland,* 4 Wall. 333, 18 L. Ed. 366; *Rich, Governor, v. Chamberlain, Warden,* '104 Mich. 436, 62 N. W. 584, 27 L. R. A. 573. The power conferred by section 10 of the Constitution is practically unrestricted, and the exercise of executive clemency is a matter of discretion. It cannot, however, be treated as a privilege. It is as much an official duty as any other act. It is vested in the Governor, not for the benefit of the convict only, but for the welfare of the people, who may properly insist upon the performance of that duty by him if a pardon or parole is to be granted.

Chief Justice Marshall in *U. S. v. Wilson, supra,* said:

"A pardon is an act of grace, proceeding from the power intrusted with the execution of the laws, which exempts the individual on whom it is bestowed from the punishment the law inflicts for a crime he has committed. It is the private, though official, act of the executive magistrate, delivered to the individual for whose benefit it is intended."

"A parole, as the term is used in criminal law, may be defined as the release of a convict from imprisonment upon certain conditions to be observed by him, and a suspension of his sentence during his liberty thus granted." (A. & E. Enc. vol. 24, p. 552.)

This constitutional provision is self-executing, and we believe that the legislative act creating the Board of Pardons is clearly unconstitutional and void. In it the Legislature has attempted to confer pardoning power upon other state officers, which is clearly an unconstitutional interference and infringment upon the executive power.

In support of this conclusion we adopt the language and cogent reasoning of Justice Hooker, in the case of *Rich, Governor, v. Chamberlain, Warden, supra,* wherein a similar constitutional provision was construed; the Michigan Legislature having passed an act creating a board of pardons, consisting of four members, appointed by the Governor.

"There are many reasons why a power of this kind should

be confined to the highest executive officer. It involves a wide discretion. The proceedings upon the trial may be reviewed. New evidence may be taken upon which to rest the pardon thus, in effect, granting a new trial. It may be *ex parte,* after the witnesses have disappeared or are dead. It may and often is based upon an alleged reform of an offender. Youth or age may furnish an excuse for its exercise. Petitions which a good-natured public sign without reading, and importunities of interested persons and friends, may be expected wherever there is hope of success. It is therefore of the highest importance to the public that this power should be carefully exercised, and that the fullest responsibility should rest upon the person to whom it is confided. The office of Governor seems to be generally considered the proper one with which to lodge such responsibility, and the public have the right to insist upon his performance of the duty. Not only is it beyond the power of the Legislature to impose the duty upon others, but it should not in any way lessen his responsibility to the public, when he sets aside the judgment of court and jury by opening the doors of a prison to a convicted felon. If the act in question does this, it should not be sustained. The effect of it is to establish a sort of tribunal open to convicts, where the question of whether they should be pardoned or be licensed to go at large may be tried. The conclusion reached —i. e., the result—accompanied by a recommendation, must be certified to the Governor, who then grants or refuses a pardon, as he may think advisable.

"We understand that the practice of this board is to conduct its investigations with care and thoroughness, to require notice to be given to the authorities, to reduce proof to writing, and to return the same, with a report in detail, to the Governor. This, however, seems to be under rules of its own devising, or prescribed by the Governor, for the act requires nothing of the kind. This is unimportant. however. as it might be remedied by legislation. But the vital defect in the act is that it tends to substitute the judgment of the board for that of the Governor. It can be truly said that the opinions of the board need not be controlling. But the tendency is naturally to offer an opportunity, if not an inducement, to an overburdened magistrate, to depend upon the judgment of a board in which he has confidence, and which has made a more careful investigation than he has made, and to act upon the recommendation of such board, while the public have a right to the fullest exercise of his own understand-

ing and judgment, which they have signified by their Constitution that they desire. This right should not be thwarted or placed in jeopardy by a law whose natural result may be expected to contravene the spirit of the constitutional provision. A loose exercise of the pardoning power is greatly to be deplored. It is inexcusable. It is a blow at good order, and is an additional hardship upon society, in its conflict with crime and criminals— a conflict which is irrepressible, and in which the criminal has many, and possibly undue, advantages. The erection of a court of pardons is of such doubtful expediency, offering, as it does, an opportunity to the convict—practically within the doors of every prison—to press his suit for pardon, that it should never be permitted until the people have signified a willingness that the safeguards placed in their Constitution be removed. The erection of a court of pardons is to invite unworthy applications. A practice grows up. It offers a premium to pardon-brokers, and the pardon, in place of remaining a matter of high, executive discretion, based upon legitimate clemency, degenerates to a routine award of a committee, to be obtained and justified by compliance with fixed rules, and sought as an assertion of right rather than clemency. This section contemplates that the Legislature may regulate the manner of applying for pardons, but this should not be construed to confer the power to limit the discretion of the Governor to grant pardons, or to require any other officer to first pass upon the question. All power is taken from the Legislature except that of regulating the manner of applying to the executive. Act 150 [Pub Laws 1893, p. 248] does not profess or attempt to do this. Its title is silent upon the one and only subject in relation to pardons which the Constitution permits the Legislature to act upon. It nowhere provides how applications for pardons shall be applied for, or that such applications shall be uniform. It does not regulate applications for pardons. It provides for a board, which must act in cases where petitions are filed, and gives no authority to the board to act in the absence of petitions. It seems to regulate the board which the act creates, instead of regulating the manner of making application to the only officer authorized to grant pardons. Under the claim that it is prescribing a manner of applying for a pardon it imposes a duty to investigate and report, and professes to authorize the Governor to act upon such report and recommendation. If this means anything, it is that the Governor might lawfully forego any investigation, and act upon the recommendation of the board,

substituting their judgment for his own. The answer to this is that we cannot suppose that the Governor will pay any attention to the recommendation, because the Constitution imposes a duty upon him. The act does not regulate the methods of applying for pardons. It does provide for a sort of investigation, which we are told that the Legislature intended should be disregarded. In my opinion, this was not the legislative intent. On the contrary, it was expected that the Governor would do just what the Legislature undertook to provide that he might do, viz., act upon the report and recommendation without personal investigation. If there was no board of pardons, a governor would not be likely to feel at liberty to grant a pardon upon a mere application, without investigation. If he did, such a practice would not meet public approval, nor would it be a proper discharge of his duty. Yet the act in question provides that he may do that very thing, and, to sustain the act, the argument must be made that the Legislature did not mean what the language expressly states, but intended that the report and recommendation should be wholly disregarded by the Governor.

"Our attention has not been called to a case involving the question that has been discussed. Our own investigation has disclosed that, by most state Constitutions, the pardoning power is lodged with the Governor, as it is with the president under the federal Constitution. In several states the power of the Governor is restricted, possibly to cut off any danger of an undue exercise of the power. In most of those, however, the consent of the Governor is indispensable. It is, however, a significant fact, and one that bears forcibly upon this case, that we have found no instance where a board has been created by statute, but invariably by constitutional provisions."

This section of the Constitution in express terms provides that the Governor shall have power to grant paroles upon "such conditions and with such restrictions and limitations as he may deem proper." It must be conceded that under this clause of said section of the Constitution the Governor may, upon the granting of a parole, attach such conditions as he sees fit, so long as they are not immoral, illegal, or impossible of performance, provided they are to be kept and performed or complied with during the term for which the prisoner was sentenced by the judgment of the court. Counsel for petitioner contends that, as the

agreed statement· of facts shows that petitioner had not violated any of the conditions of his parole until after the expiration of the period of time designated · in the sentence of imprisonment, "the Governor is without power to revoke the parole."—citing *Ex parte Prout*, 12 Idaho, 494, 86 Pac. 275, 5 L. R. A. (N. S.) 1064. In that case the judgment provided that the term of imprisonment should commence to run from the date of defendant's delivery to the warden, and by a divided court it was held that a condition of the parole was illegal because it extended beyond the term for which the defendant was sentenced, and thereby increased the punishment imposed by the judgment. Justice Sullivan dissented in a strong, well-reasoned opinion. The doctrine of that case has no application here.

Under the provisions of Procedure Criminal (article 14, c. 89, Snyder's Comp. St. 1909), after a plea or verdict of guilty the court must render judgment, and assess the punishment or penalty prescribed by law. The time fixed for executing a judgment and sentence, or for the commencement of its execution, is not one of its essential elements, and, strictly speaking, is not a part of the judgment and sentence. The essential part of the judgment and sentence is the punishment, and the amount thereif, without reference to the time when it shall be executed. Except in cases where the defendant has been convicted of two or more offenses, before judgment of either, the order of the court in reference to the time when the sentence shall be executed is not material. Expiration of the time without imprisonment is in no sense an execution of the judgment and sentence. *Hollon v. Hopkins*, 21 Kan. 638; *Dolan's Case*, 101 Mass. 219; *State v. Cockerham*, 24 N. C. 204; *Ex parte Bell*, 56 Miss. 282; *Re Edwards*, 43 N. J. Law, 555, 39 Am. Rep. 610.

"While, as a general rule, the imprisonment begins with the sentence, and the sentence is subject to existing valid laws, the imprisonment may be suspended by appellate or other judicial proceedings or by reprieve, or otherwise; and the period during which the imprisonment may be suffered may be interrupted by escape, or be changed by the pardoning power. so long as the change does not increase the penalty imposed by the sentence, or

is not otherwise illegal." (*State v. Horne,* 52 Fla. 125, 42 South. 388, 7 L. R. A. (N. S.) 719. See, also, *In re Linden,* 112 Wis. 523, 88 N. W. 645; *Ex parte Wadleigh,* 82 Cal. 518, 23 Pac. 190; *Re Canfield,* 98 Mich. 644, 57 N. W. 807.)

"The release of a prisoner on parole does not amount to a commutation of his sentence, since it does not change his punishment into a less severe one; the sentence remaining in force, and the prisoner, while enjoying his liberty, being liable to be re-imprisoned at any time." (A. & E. Enc. vol. 24, p. 553.)

In *Fuller v. State,* 122 Ala. 32, 26 South. 146, 45 L. R. A. 502, 82 Am. St. Rep. 17, the court says:

"The parole does not in any wise displace or abridge the sentence; it merely stops its execution for a time only, it may be, or indefinitely, it may prove—it suspends, not destroys. The suspension is like that which occurs constantly in the administration of criminal laws where the defendant appeals from the judgment of conviction. The execution of the sentence is by the appeal superseded and postponed pending the appeal; and, if the judgment is affirmed, the execution of the sentence thereupon begins and continues for the period set down originally in the judgment. So the word is used in this statute; and upon condition broken, the sentence, which has all along hung in its entirety over the liberty of the paroled convict, is to be executed upon him 'as though no parole had been granted to him.' This is the plain meaning of the statute; and, so interpreted, it involves of necessary consequence the proposition that upon condition broken even after the time at which the sentence would have ended but for its suspension, the convict may still be remanded to custody that the unserved, and hence unexpired, part of the sentence—that part which he was released from serving during the period of durance originally specified—may be executed upon him. So the law is written."

The conditions of the parole in this case refer to the judgment and sentence to be affected by it in its legal and proper aspect. The conditions cannot be said to be immoral, or to be impossible of performance during the life of the petitioner; nor can it be illegal, since the particular period of time within which the sentence is to be suffered by the convict as specified in the judgment and sentence is not a part of the judgment and sentence, except so far as it fixes the *quantum* of time that he must

suffer such penalty, and the conditions imposed are not forbidden by law, and do not increase the punishment imposed by the court. If the particular period of time fixed by the court within which the execution of the sentence of imprisonment was to be fully performed is extended, or held in abeyance or postponed, the time or duration of imprisonment is not thereby increased, and the interruption of the execution of the judgment and sentence during the time the petitioner was at liberty under the parole was secured to him by his acceptance of the conditions thereof, and the petitioner cannot complain of it.

If a condition of the parole upon which petitioner secured his release from imprisonment has been violated by him, the parole may be revoked, and the petitioner may be rearrested and compelled to undergo so much of the original sentence as he had not suffered at the time of his release. *State v. Horne,* 52 Fla. 125, 42 South. 388, 7 L. R. A. (N. S.) 719; *State v. Barnes,* 32 S. C. 14, 10 S. E. 611, 6 L. R. A. 743, 17 Am. St. Rep. 832; 12 Cyc. p. 968; *Ex parte Marks,* 64 Cal. 29, 28 Pac. 109, 49 Am. Rep. 684. The petitioner accepted and agreed to the conditions of the parole, thereby securing his release from imprisonment, and he is bound by its terms and conditions. One of the conditions of the parole was that defendant, "Will Ridley, will abstain from the use of intoxicating liquors, and to remain away from all places where intoxicating liquors are sold, and places where gambling is carried on and will avoid all evil associations; that he will respect the laws of the state of Oklahoma, and conduct himself in all respects as an upright citizen," The violation of this condition of the parole renders it null and void, and upon the revocation by the Governor for such violation the *status* of the petitioner is as though he had never been paroled. The law imposes the obligation to complete the term of imprisonment fixed by the judgment and sentence as though no parole had been granted, and petitioner should be returned to serve the remainder of his term of imprisonment.

When a convict has been released upon a parole, his rearrest and return to custody by an executive order revoking the parole

is not in violation of the constitutional guaranty "that no person shall be deprived of his liberty without due process of law" or "that no warrant shall issue but upon probable cause supported by oath or affirmation," since being a convict at large by executive clemency, which he has accepted on conditions included therein, upon the violation of any of such conditions he is merely an escaped convict, and not entitled to invoke such constitutional guaranty. However, a convict who has been released upon a parole, and apprehended upon the revocation thereof, in the absence of a statute or of an express provision in the parole giving him the right to a hearing before a court having jurisdiction, may upon an application for writ of *habeas corpus* averring the facts show that he has fully performed the conditions of the parole, or that he has a legal excuse for not having done so, or that he is not the same person who was convicted. If it be determined upon the hearing of such application that there has not been a violation of or noncompliance with the condition or conditions of the parole, or if the petitioner shall show to the satisfaction of the court some valid reason or excuse for such violation or noncompliance, he should be discharged from custody, but if a violation of or noncompliance with, the condition or conditions of the parole be shown to the satisfaction of the court without out any legal reason or excuse therefor, the petitioner should be remanded to custody, and ordered to have the original sentence imposed upon him duly executed, or so much thereof as has not been already suffered.

In the matter of "the credit for good time allowed petitioner under the law" the parole and its revocation in no way affects it. Under our Constitution it is the duty and prerogative of the legislative department to define crime and fix the maximum and minimum penalty, and to fix by law the kind and manner of punishment, and to provide such disciplinary regulations for prisoners, not in conflict with the fundamental law, as the Legislature deems best. It is the duty of the judicial department to try offenders against those laws, and upon conviction to sentence them under the statute. The Governor has no authority, and has

not attempted to insert as a provision of the parole, that a revocation of its provisions should work a forfeiture of the statutory diminution of sentence for good conduct while in prison. Such a condition as a consequence of the revocation of the parole would in effect require petitioner to serve a longer term than that for which he had been sentenced, and would therefore be illegal. We are of opinion, upon an examination of the authorities and upon principle, that an act of the Legislature specifically defining credits for good behavior, in existence at the date of the judgment against the prisoner, becomes a part of the sentence and inheres into the punishment assessed, and is not an invasion of the constitutional prerogative of the Governor.

It having been brought to the attention of the sheriff of Stephens county, the respondent in this case, that by executive order it became the duty of all sheriffs and other peace officers of the state to apprehend the said William Ridley, wherever he may be found, and to take him into safe custody, and to conduct him to the warden of the penitentiary at McAlester, the respondent as sheriff acted within his authority in arresting and detaining him in custody. It appearing that the arrest and detention of the petitioner is warranted under the conditions of the parole, by which he secured his release from imprisonment, the writ of *habeas corpus* is denied.

It is by the court ordered that petitioner be remanded to the custody of the sheriff of Stephens county, and by him to be delivered to the warden of the state penitentiary at McAlester, there to serve the remainder of the original sentence imposed upon him until the same shall be fully executed.

Writ denied, and petitioner remanded.

FURMAN, PRESIDING JUDGE, and OWEN, JUDGE, concur.