STATE EX REL. VOLDEN, Plaintiff in error, vs. HAAS, Sheriff, Defendant in error.

*April 3—May 5, 1953.*

128

For the plaintiff in error there were briefs by *William L. McCusker,* attorney, and *Wilkie, McCusker & Wilkie* of counsel, all of Madison, and oral argument by *Mr. McCusker* and *Mr. Edwin M. Wilkie.*

For the defendant in error there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and oral argument by *Mr. Platz.*

MARTIN, J. Relator's conviction was had under sec. 340.47, Stats.:

". . . any person of the age of eighteen years or under who shall unlawfully and carnally know and abuse any female under the age of eighteen years shall be punished by imprisonment in the state prison not more than ten years nor less than one year, or by fine not exceeding two hundred dollars."

Sec. 340.485, Stats., provides:

"SEX CRIMES. (1) *Rape and related crimes; commitment for presentence examination.* If a person is convicted under sections 340.46 to 340.48, .351.34, or 351.41, the court shall commit him to the department of public welfare for a presentence social, physical, and mental examination. The court and all public officials shall make available to the department upon its request all pertinent data in their possession in respect to the case. . . .

"(4) *Report of examination.* Upon completion of the examination, but not later than sixty days after the date of the commitment order, a. report of the results of the examination and the recommendations of the department shall be sent to the court. . . .

"(6) *Commitment to the department.* If it appears from said report that the department recommends specialized treatment for his mental and physical aberrations, the court shall either place him on probation with the requirement as a condition of such probation, that he receive outpatient treatment in such manner as the court shall prescribe, or commit him to the department under this section."

Relator's first contention is that these requirements of sec. 340.485, Stats., operate to deprive him of his liberty without due process of law because under the procedure therein outlined he is not served with notice of the report made by the department nor given a hearing upon the mental condition found by the department; that the findings may be made on the basis of unsworn information, received *ex parte* and appraised by the department, without provision for judicial review. Upon recommendation by the department that the accused be given specialized treatment for his mental aberrations, the court is required to do one of two things,

either place him on probation on the condition that he receive outpatient treatment, or commit him to the department.

It may be noted that under other subsections of the statute the department may release committed persons on parole at any time it deems them capable of making the proper social adjustments; that it is authorized to discharge committed persons whenever that may be done in the light of public safety, except that in felony cases approval of the court must be obtained if the discharge is within two years of commitment; that at the expiration of the maximum term for the offense of which the accused was convicted, the department is obliged to discharge him unless, if it is of the opinion that the discharge would be dangerous to the public, it orders his retention for a longer period and applies to the committing court for review of its order. Under the circumstances last mentioned, provision is made for notice, hearing, production of witnesses and evidence, and representation of the accused by counsel, etc.

The statute gives relator no right to a court hearing on the question of his mental condition and need for specialized treatment from the time of his conviction until the expiration of the maximum term for which he might be imprisoned. Relator's contention is that he is thus deprived of his liberty without due process of law. He takes strenuous exception to the statement of the lower court that he is a "convicted felon," arguing that the crime of which he was convicted is not a felony which results in any loss of civil rights. Whether or not the felony of which relator was convicted deprives him of his civil rights is immaterial. The fact is that he is afforded all the rights of due process at the time of trial. He has been afforded the right to be heard by himself and counsel, to be advised of the nature of the charge against him, to meet the witnesses face to face and compel the attendance of witnesses in his own behalf, and to a speedy trial by an impartial jury. But upon conviction, he is subject to whatever loss of liberty

the legislature has prescribed for his crime, whether that be imprisonment in the state prison or commitment to the department.

In *State v. Meyer* (1949), 228 Minn. 286, 37 N. W. (2d) 3, the Minnesota court considered this argument in a case involving the Youth Conservation Act which requires that persons under twenty-one years of age must, upon conviction or plea of guilty, be either placed on probation or committed to an administrative commission for the maximum term prescribed by the statute creating the crime for which he is committed. In discussing the defendant's constitutional rights to due process, the court there said (p. 306) :

"In all these arguments, defendant seeks to confuse the administrative supervision' of convicted offenders after the imposition of sentence with proceedings that take place prior to the imposition of sentence. The trial terminates when the defendant is convicted. No rights of the defendant are affected by the act in any way up to that time. The court must then impose such sentence as the legislature has prescribed. In this case, the mandatory sentence is commitment to the commission unless the court places defendant on probation. Supervision of defendant after commitment may be vested in an administrative board without violating any constitutional rights of defendant. That is what the act does."

In enacting sec. 340.485, Stats., the Wisconsin legislature has recognized that sex crimes are frequently committed by persons afflicted with mental aberrations, and has established this means of accomplishing the rehabilitation and adjustment of the offender to society for the protection of the public. There can be no question but that this method of rehabilitation is more desirable, from the standpoint of both the individual and society, than the punishment by imprisonment prescribed in sec. 340.47.

Relator challenges the constitutionality of sec. 340.485, Stats., on the further ground that it delegates judicial power to the department of public welfare.

It is conceded that administrative boards may constitutionally exercise such judicial power as is incidental to their administration of the particular statutes which the legislature has given them to administer. *International Union v. Wisconsin E. R. Board* (1951), 258 Wis. 481, 46 N. W. (2d) 185. Relator complains, however, that the authority given to the department of public welfare under sec. 340.485, Stats., is authority to adjudge what the sentence should be, and cites *In re Linden* (1902), 112 Wis. 523, 88 N. W. 645, to the effect that the legislature may not vest such authority elsewhere than in the courts. Our attention is also called to *People v. Cummings* (1891), 88 Mich. 249, 50 N. W. 310, where the Michigan act providing for indeterminate sentences was held unconstitutional in that it vested in the board of control the authority to fix the maximum term.

Since those early days, however, the methods of dealing with convicted criminals have changed in that the function of administering laws respecting parole and probation, good time allowances, etc., have been placed to a large extent within the authority of nonjudicial agencies. It will be noted that under sec. 57.01, Stats., the court may withhold the sentence of a person convicted of a felony (outside of Milwaukee county) and place him on probation to the department of public welfare, which department has exclusive authority to revoke such probation without notice or hearing and order the offender brought before the court for sentence, "which shall then be imposed without further stay." (Sec. 57.03 (1).)

Under sec. 57.06, Stats., it is the department of public welfare, within the limits there prescribed, which has authority to parole one sentenced to the state prison. The provisions of sec. 53.11 likewise give to the department authority to release or continue a prisoner on parole.

Our system of indeterminate sentences with supervision vested in administrative agencies, of probation and suspended

sentences, and other similar laws are a far cry from the old doctrine of compensatory punishment for crime. And, although such laws have been attacked on the ground that they vest administrative officers with powers properly belonging to the judiciary, they have been sustained. The basis for this is sound. As stated in *State v. Meyer, supra* (pp. 293, 298):

"The legislature can, and always has, fixed and determined the punishment that shall be imposed for a violation of law and the limits of discretion vested in the courts in the imposition of the sentence. It determines whether the law violator shall be committed to a penal institution at all, or if some other form of punishment, such as a fine, shall apply. It may determine the minimum as well as the maximum sentence; it may permit the court to fix the length of the sentence within the maximum term prescribed or it may prescribe a minimum which is mandatory and permit the court to fix the maximum, or it may provide a maximum and permit an administrative body to determine how long the violator shall serve; it may require the court to sentence violators to certain penal institutions or grant the court authority to determine which of such institutions such violator may be committed to, or it may vest in an administrative official the power to determine which institution shall be used; and it may grant an administrative board the authority to supervise a convicted person, either within or without a penal institution. It may also grant the court power to suspend a sentence and may limit such power to certain cases and deny it as to others. These are but a part of the functions performed by the courts within the limits prescribed by the legislative branch of the government. . . .

"It has always been a legislative function to determine what the sentence shall be. Here, the sentence is commitment to the commission. The act does not become operative as to district court cases until after conviction by trial or plea of guilty. It does not encroach upon those functions which are inherently judicial. . . ."

The court there also referred to *State v. Dugan* (1913), 84 N. J. L. 603, 89 Atl. 691, where it was stated, in upholding the constitutionality of the New Jersey Indeterminate Sentence Law (p. 609):

"The pronouncing of a sentence is, undoubtedly, a judicial act. But the punishment which the sentence pronounces comes from the law itself. As Blackstone truly expressed it, under head of 'Judgment and its Consequences,' 'The court must pronounce that judgment which the law hath annexed to the crime.' It is further said that the statute in effect curtails the judicial discretion, to be exercised by the judge. Granting that it does, it is, nevertheless, the valid exercise of legislative power under the constitution over crimes."

In *State v. Duff* (1909), 144 Iowa, 142, 122 N. W. 829, 24 L. R. A. (N. S.) 625, 138 Am. St. Rep. 269, where the court considered the constitutionality of the Iowa Indeterminate Sentence Law, it was likewise held (p. 145):

"That the legislature has the power to fix the punishment for crime, with the limitation only that it be not cruel or excessive, will hardly be seriously questioned. And if the legislature has such power, it may surely fix a definite and certain term of imprisonment for any particular crime, and this without placing any discretion in the hands of the court whose duty it is to carry out the legislative mandate."

When it adopted the Youth Authority Act in 1941 the California legislature provided that in the case of convicted persons under twenty-one years of age:

"If the Authority believes that any person referred to it as provided in this section can be materially benefited by the procedure and discipline of the Authority, and that proper and adequate facilities exist for the care of such person, it shall so certify to the court. The court shall thereupon commit said person to the Authority." (Sec. 1731.5, California Welfare and Institutions Code, Deering, 1952.)

In *People v. Walker* (1947), 82 Cal. App. (2d) 196, 185 Pac. (2d) 842, the defendant, a seventeen-year-old, was convicted of assault and sentenced to the state prison as provided by law. Upon appeal, it was contended that the court should have referred him to the Youth Authority, and the appellate court said (p. 202):

"It thus appears that the trial court in passing upon the defendant's request for referral to the Youth Authority, failed to apply proper criteria in the attempted exercise of his discretion. For this reason the cause should be remanded to the trial court in order that such discretion may be exercised on the basis of the defendant's youth and his ability to profit by a commitment to the Authority. In any event, the final determination as to whether or not the defendant is a proper subject for commitment to the Youth Authority will lie with that body and not with the trial court. For this reason a trial court should not be too hesitant in referring a youthful offender to the Authority in accordance with the stated purpose of the act; particularly is this true where, as here, there is any possibility that he may be found to be a proper subject for commitment thereto."

It is our opinion that sec. 340.485 (6), Stats., requiring commitment of the relator to the department of public welfare is constitutional, and that the order appealed from must be affirmed.

*By the Court.*—Order affirmed.