STATE, Respondent, vs. CARLI, Appellant.*

*November 8—December 3, 1957.*

* Motion for rehearing denied, without costs, on February 4, 1958.

430

432

For the appellant there was a brief and oral argument by *Joseph E. Tierney of Milwaukee. (Dominic H. Frinzi* of Milwaukee, substituted on motion for rehearing.)

For the respondent there was a brief by the *Attorney General* and *William A. Platz,* assistant attorney general, and *George D. Sullivan,* district attorney of Iron county, and oral argument by *Mr. Platz* and *Mr. Sullivan.*

FAIRCHILD, J.

1. *Sufficiency of Evidence.* Defendant argues that the evidence was insufficient to establish beyond reasonable doubt the offense of assault with intent to commit great bodily harm. He relies on the fact that the court did not find him guilty of mayhem or assault with intent to commit mayhem. Therefore, he says, the court entertained a reasonable doubt whether defendant bit Garber's ear. To the contrary, however, the circuit court made it crystal clear in its memorandum opinion that it determined "beyond a reasonable doubt that John Carli did chew off a portion of the ear of Garber." Apparently the court was not satisfied that the extent of the injury intended or inflicted was sufficient to qualify as mayhem.

It is clear from the statement of facts previously set forth that there were a number of conflicts in the testimony which were material only as they might affect credibility. The ear biting could not have been justified as self-defense in these circumstances even if the court believed that Garber struck the first blow. There was a conflict on the central issue of whether defendant bit the ear. The court believed Garber's testimony that defendant did. We are satisfied that the extent of the injury is sufficient to constitute great bodily harm and that there was ample evidence that the injury was intentionally inflicted.

*2. Double Jeopardy.* The information contained two counts. The first charged mayhem by biting off a portion of the ear with malicious intent to maim and disfigure; the second charged an attempt to maim with intent to tear off an ear with his teeth. Defendant maintains that he was placed in second jeopardy for the same offense when the trial court refused to find him guilty of mayhem or attempted mayhem and found him guilty of assault with intent to do great bodily harm.

The real question, as we see it, is whether assault with intent to do great bodily harm is a lesser offense than mayhem and included within it. If it is, then the defendant was at all times during his trial facing the lesser charge as well as the more-inclusive ones set forth in the information, and he could properly be found guilty of the lesser offense where the court deemed that the greater had not been proved.

Sec. 340.35, Stats. 1953, provides in part as follows:

"340.35 MAYHEM. Any person with malicious intent to maim or disfigure, who shall . . . cut or tear off an ear, . . . shall be punished by imprisonment in the state prison, not more than fifteen years nor less than one year, or by fine not exceeding five thousand dollars nor less than two hundred dollars."

Sec. 340.36, Stats. 1953, provides in part as follows:

"340.36 ASSAULT WITH INTENT TO MURDER OR MAIM. Any person who shall assault another with intent . . . to maim or disfigure his person in any of the ways mentioned in section 340.35, shall be punished by imprisonment in the state prison not more than five years nor less than one year, or by fine not exceeding one thousand dollars nor less than one hundred dollars."

Sec. 340.41, Stats. 1953, provides:

"340.41 ASSAULT, GREAT BODILY HARM. Any person who shall assault another with intent to do great bodily harm

shall be punished by imprisonment in the state prison not more than three years nor less than one year, or in the county jail not more than one year, or by fine not exceeding five hundred dollars nor less than one hundred dollars."

Clearly the information expressly charged defendant with crimes for which the maximum punishment was greater than for the offense of which he was convicted. In order to prove mayhem, as charged in the first count, the state must prove that defendant acted with malicious intent to maim or disfigure and that he cut or tore off Garber's ear. We are satisfied that the cutting or tearing off of an ear, or even the portion disclosed by the evidence here, constitutes great bodily harm. Thus if the state had successfully proved the offense charged in the first count, it would have proved every element of the offense of assault with intent to do great bodily harm. That is the test of whether an offense not expressly charged is included within the charge specifically set forth.

Defendant relies principally upon *Kilkelly v. State* (1878), 43 Wis. 604. It was there held that an information charging assault with intent to murder did not include assault with intent to maim because the intent to maim is different in character from intent to murder. The *Kilkelly* decision was expressly modified, however, in *Birker v. State* (1903), 118 Wis. 108, 112, 94 N. W. 643. The court said:

"The information in the present case charges that the plaintiff in error, being armed with a dangerous weapon, did make an assault upon another with intent to murder. The verdict declares him guilty of an assault with intent to do great bodily harm. All the elements of the offense charged are found, except the particular intent to murder, but that the accused had a different intent, namely, the intent to do great bodily harm. It seems that an assault with intent to murder must, from the very nature of the acts constituting the offense, embrace an intent to do great bodily harm. It therefore

follows that the offense of which plaintiff in error was convicted is necessarily included in the offense charged in the information, and we are of opinion that the information, as presented, sustains the conviction of an assault with intent to do great bodily harm. This conclusion overrules the case of *State v. Yanta, supra,* and modifies the case of *Kilkelly v. State, supra,* in so far as it was made the basis of the decision in the *Yanta Case.*"

3. *Speedy Trial.* Defendant claims he was denied his constitutional right to a speedy trial. He was arrested December 18, 1954, and a preliminary hearing was had before the county court January 4, 1955. It resulted in an order binding defendant over to the circuit court for trial. Apparently defendant attacked the procedure and the circuit court dismissed the proceeding in May, although the record in this court does not contain the motion for, nor order of, dismissal.

Defendant was rearrested May 16, 1955, and a preliminary hearing was had before the county court June 1st, and time allowed thereafter for briefs. On June 21st, the county court ordered defendant to appear for trial before the circuit court.

On November 23, 1955, the district attorney filed the information. On November 25th, there was a hearing before the circuit court on a writ of *habeas corpus,* apparently grounded upon a claim that a speedy trial was being denied. The writ appears to have been quashed although the complete record of that proceeding is not before us.

The first regular term of circuit court for Iron county after June 21st began Monday, December 5, 1955, and on that day defendant filed an affidavit asserting prejudice on the part of the circuit judge. Judge CHARLES made a prompt request of Judge DALEY, then chairman of the board of circuit judges, for designation of another judge. Judge DALEY contacted several judges, but was unable to find one available and designated himself. Because of matters pending

in his own circuit, he could not try the case before March 14, 1956. Defendant was arraigned and trial began on that day.

Defendant moved for dismissal because he had been denied a speedy trial. He showed that his counsel had made several requests during the summer of 1955 that the district attorney file an information so that the depositions of certain witnesses who were traveling with a carnival could be taken. The motion for dismissal was denied.

Sec. 7, art. I, Wis. Const., guarantees the accused a speedy trial. In *State v. Sawyer* (1953), 263 Wis. 218, 56 N. W. (2d) 811, this court indicated that a delay of two years between indictment and trial probably would violate a defendant's right to speedy trial if he demanded an earlier trial. No other Wisconsin case dealing with delay of a criminal trial has been cited to us. In 22 C. J. S., ·Criminal Law, p. 716, sec. 467, it is said, "One accused of crime is not entitled to a trial immediately on his arrest or accusation, he must wait until a regular term of the court having jurisdiction of the offense with which he is charged, . . . Further, his right is not infringed by continuances in the discretion of the presiding judge, unless such discretion is arbitrarily exercised."

Defendant would, under sec. 955.01 (formerly sec. 355.01), Stats., have been entitled to a discharge if not indicted or informed against before the end of six months after June 21, 1955. The information, however, was filed approximately five months after that date. The legislature, in enacting sec. 955.10 (formerly sec. 355.10), impliedly approved a delay of trial until the next term of court even where the defendant is imprisoned, and where · there is greater delay, that statute does not provide for discharge, but requires that defendant be bailed without sureties.

There is nothing in the record to suggest that the district attorney would not have brought defendant to trial at the

regular term which began May 16, 1955, were it not for the dismissal because of some defect in the first preliminary. It may also be assumed that defendant would have been tried at the next term on December 5th, or promptly thereafter but for defendant's filing an affidavit of prejudice. The delay thereafter until March 14th, was not unreasonable in view of the necessity of fitting the trial into the schedule of a judge of another circuit.

Under the circumstances of this case we do not deem that defendant was deprived of a speedy trial.

4. *Compulsion of Witnesses.* Harris, Baby Lee Parker, H. Joe Starr, Stormy Weather, and one other whose name does not appear, were in the Bowery Club at the time of the fight. Four of them had been interviewed by defendant's attorney shortly after the fight, although he never disclosed to the court the testimony he expected them to give. The five were with a carnival which, at the time of the preliminary in June, was in Rockford, Illinois, and which disbanded in November in Georgia. The district attorney declined to stipulate to the taking of their depositions when in Rockford.

Defendant claims that because the district attorney did not file the information until November 23d, after the carnival disbanded, the state did not provide defendant with compulsory process to compel the attendance of witnesses in his behalf. He points out that where witnesses are beyond the reach of process, as they apparently were in this case, the defendant is entitled to a commission for taking testimony by deposition even though the state be powerless to compel attendance. 14 Am. Jur., Criminal Law, p. 881, sec. 163. Wisconsin makes provision for a deposition in a criminal case, but only after filing of an indictment or information. Sec. 326.06, Stats. Therefore, defendant argues, the district attorney's delay in filing an information also delayed defendant's ability to take the depositions of these five witnesses until after defendant lost track of them.

It is regrettable that the district attorney did not file the information more promptly when requested to do so. Defendant has not shown, however, that the state's assistance in obtaining testimony has been refused.

Three and one-half months elapsed between the filing of the information and the trial. Defendant was then free to obtain authority for a deposition under sec. 326.06, Stats., if he could locate one or more of these witnesses. If he could not locate them, he could move for a continuance upon a proper showing. He did not so move, but kept demanding an early trial. He was neither denied the issuance of a subpoena nor the authority to take a deposition, nor was he forced to trial without such testimony in the face of a proper request for continuance.

In fairness to counsel representing defendant on this appeal, it should be noted that he was not defendant's counsel in the trial court.

*By the Court.*—Judgment affirmed.

The following opinion was filed February 4, 1958:

FAIRCHILD, J. (*on motion for rehearing*). Defendant asserts that he was deprived of the right to be confronted with the witnesses against him. Apparently he objects to the consideration by the circuit court of a report of a presentence investigation made at the court's request by the state department of public welfare. This proposition was not considered in the opinion previously filed because it was not referred to either in the brief or on oral argument.

The trial closed March 15, 1956, except that time was allowed for submission of briefs, and sentence was imposed at Hurley on June 26th. The presentence investigation had been made and the report submitted to the court before that date. Defendant moved that the judgment be set aside challenging, among other things, the propriety of the court's

consideration of the report. The court denied the motion and filed a memorandum reciting the facts. These are not challenged by defendant and the memorandum makes it clear that the presentence investigation was not requested or made until after the court's decision as to defendant's guilt had been dictated to the court reporter and transcribed, although not filed until June 26th.

The court stated that he had handled the matter in this way "so that it would not be necessary for the defendant to appear at Hurley for pronouncement of judgment and then have a presentence investigation ordered and the defendant have to make an additional trip from Milwaukee." He also stated that between March 15th and June 26th, he was completing the regular jury terms in his own circuit and fulfilling previous commitments to try cases in two other circuits.

In relying upon the right of confrontation, defendant overlooks the distinction between the determination of guilt and the exercise of the court's discretion as to probation or extent of punishment. The right "to meet the witnesses face to face" guaranteed by sec. 7, art. I, Wis. Const., and the standards of fair trial embraced within the concept of due process of law in the Fourteenth amendment, U. S. Const., must be fully respected where the question for consideration is the guilt or innocence of the accused. Once the defendant has been found guilty, he is "subject to whatever loss of liberty the legislature has prescribed for his crime." *State ex rel. Volden v. Haas* (1953), 264 Wis. 127, 130, 58 N. W. (2d) 577. That consideration by the court of a confidential report of presentence investigation does not violate a defendant's constitutional rights was settled for Wisconsin in the *Volden Case* and settled with respect to the due-process clause in *Williams v. New York* (1949), 337 U. S. 241, 69 Sup. Ct. 1079, 93 L. Ed. 1337.

There appears to be no express statutory provision for a presentence investigation in the instant case. There was one in sec. 340.485, now sec. 959.15, Stats., relating to sex crimes, considered in the *Volden Case*. Other provisions are found in sec. 54.11, under the Youth Service Act and sec. 57.025 relating to the municipal and district courts in Milwaukee county. But we view a request for a report, and consideration of it if available, as discretionary with the court, even in the absence of statute. The opinion in *Williams v. New York, supra,* contains a discussion of the theory and usefulness of presentence procedure.

Federal Rules of Criminal Procedure, Rule 32 (c), 18 USCA, p. 350, governs presentence investigations and reports in United States courts. We note that it provides: "The report shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or has been found guilty." While it is clear in the instant case that the trial judge had made his determination of defendant's guilt before obtaining the report, and further that the judge avoided a burden for the defendant as well as for the court in not calling the defendant back to Hurley until the report had been made and the court was ready to pronounce sentence, it would ordinarily be better practice to make formal pronouncement of the finding of guilt before obtaining the report, at least in the absence of express consent by the defendant.

*By the Court.*—Motion for rehearing denied.

MARTIN, C. J., took no part.