# W. W. WHEAT v. STATE.

No. A-5341.   Opinion Filed April 10, 1926.
(244 Pac. 821.)

Wilkinson & Hudson, for plaintiff in error.

The Attorney General, for the State.

DOYLE, J.   The information in this case charged that in Pittsburg county, May 2, 1924, H. E. Wheat, W. W. Wheat, and G. W. Wheat did have in their possession about three gallons of whisky, with the unlawful intent to sell the same.   A trial was had thereunder, and the jury returned a verdict finding the defendant, W. W.

Wheat, guilty as charged, and fixing his punishment at a fine of $100 and confinement in the county jail for 60 days. From the judgment he appeals.

In support of the contention of counsel for appellant that the conviction should be reversed and a new trial ordered, numerous errors are assigned. As to the sufficiency of the evidence, we think there can be but little doubt. L. B. Owen, deputy sheriff, testified that about 10 o'clock on the day alleged he went from his home over the mountain to the Canadian river to see if some mash barrels located there had been filled, and saw three men going north through the brush; two of them he took to be G. W. Wheat, and his son, W. W. Wheat, appellant. The three men started to run. W. W. Wheat was carrying a sack on his shoulder, and be hallooed two or three times to him to stop, then shot up in the trees, and W. W. Wheat threw the sack against a rock and started to get through the wire fence, and he shot again. W. W. Wheat stopped, and he arrested him. The sack contained five broken half-gallon fruit jars, and one unbroken, full of whisky. He started with him to Scipio, and after going a little ways he said he wanted to rest, and he let him rest for about five minutes. Appellant remarked that he would never get out of there with him. They started along and appellant said, "I see somebody." Then a gun fired; one shot struck his head, and one entered his shoulder. Then he saw G. W. Wheat behind a tree holding a shotgun, and he commenced shooting at him with his pistol, and G. W. shot at him again, and told appellant to run. Then he and G. W. agreed not to shoot any more, and he asked G. W. to give up, and G.W. told him he could not take him, so he started on with appellant to Scipio. After G. W. was arrested he asked him, "What did you shoot me for?" and G. W. said, "I was just crazy mad; that was not the boy's whisky, it was my whisky. Six half gallon jars." No

objection was made or exception taken to this statement.

Will Anderson, sheriff, testified that when he arrested G. W. Wheat he asked him what he was going to do with the boys, and witness told him that he was going to take them in. Then the elder Wheat said the whisky that Owen got was his—that it did not belong to the boys.

As a witness in his own behalf, appellant, W. W. Wheat, testified that he lived on the Finley place, a mile southwest of his father's place, and that morning went by his father's place down to the river; that he did not see his father that morning until the shooting occurred; that two or three days before he met two Indians and contracted to buy from them a gallon of whisky and they were to meet him with the whisky. On meeting them one said he would go and get it; in a few minutes he ran back and said, "The law is down there." Then Owen fired a couple of shots, the Indians ran off, and one of them threw away the sack that contained the whisky. That he called to Owen to stop shooting—that he was not going to run. That he never did have the whisky in his possession. That Owen arrested him, and they started for Scipio. After walking about an hour Owen raised his gun and fired, and he looked up and saw his father about 60 yards away. Owen fired a second shot; then his father shot Owen with a shotgun. Owen fired two more shots, and his father fired again. Owen fired again, then said to his father, "You have killed me, I want a doctor;" and his father said, "You have killed me, too." Owen said, "You come with me;" and his father said, "No, I am not going with you," and walked away. That his father had nothing to do with the whisky.

G. W. Wheat testified that he took his shotgun that

morning and went up in the hills to shoot squirrels, and saw Owen and his son Bill. About that time Owen shot at him twice, one shot cut a part of his toe off; then he shot Owen, and Owen fired two more shots, and he fired at Owen again; then Owen asked him to go for a doctor; that he started for home, and Owen and the boy went on down the road. That he did not know anything about the whisky that Owen found, and had nothing to do with it. That he did not tell the sheriff that it was his whisky.

In the course of the trial appellant moved for a separate trial. The court overruled the motion. This ruling is assigned as error. It is urged that if appellant had been tried alone, the evidence as to the shooting affair would not have been competent.

Our Criminal Code provides:

"When two or more defendants are jointly prosecuted for a felony, any defendant requiring it must be tried separately. In other cases defendants jointly prosecuted may be tried separately or jointly, in the discretion of the court." Section 2695, C. S. 1921.

The exercise of the discretion here given to the trial court in granting or refusing a severance in a misdemeanor case is reviewable; but to make the same the subject of review, the case-made or bill of exceptions must show an application for a severance setting out some unusual and extraordinary condition or state of facts in connection with the case which would materially prejudice the rights of the appellant in a joint trial; and this must be supported by affidavits or oral testimony, and may be controverted by the state in the same way. In the absence of such showing on the part of the applicant, the trial court cannot know and is not required to anticipate that a situation will arise in the trial justifying a severance. The fact that the trial does subsequently develop such a situation is

immaterial; and unless such application is filed and thus supported there is nothing before the court calling for the exercise of the discretion given it. Steen v. State, 4 Okla. 309, 111 P. 1097; Curzan v. State, 13 Okla. Cr. 71, 161 P. 1179; Murphy v. State, 13 Okla. Cr. 407, 164 P. 1000. The case-made before us dscloses no such application or showing. The application in this case appears to have been oral; no ground for it whatever was stated, and no showing of any kind or character was made.

It follows that the court did not err in denying a severance.

It is contended for appellant that the court erred in admitting evidence of the shooting and of the acts and statements of appellant's father, his codefendant, with reference to the shooting. The testimony objected to was admitted by the court under the theory of the state that appellant and his codefendants were confederates in the commission of the offense charged, and that after appellant's arrest his father armed himself with a shotgun and was attempting to rescue appellant when the shooting occurred.

The general rule is familiar that, where several parties conspire or combine together to commit any unlawful act, each is criminally responsible for the acts of his associates or confederates committed in furtherance or in prosecution of the common design for which they combine. The least degree of concert or collusion between the parties to an illegal transaction makes the act of one the act of all. It is equally well stated that acts and declarations of a conspirator after the offense is committed may be received against the defendant making them, but not against his codefendants. The defendants did not severally object to the admission of this testimony; only a general objection in behalf of all the defendants was interposed.

The evidence objected to was competent and admissible against appellant's codefendant, and it appears there was no specific objection on his part, and the court was not asked to instruct the jury limiting the evidence only to the codefendant against whom it was admissible. Thus it appears from the record that the question argued was not saved by proper objection, exception, or motion.

It is also contended that the county attorney, in his statement of the case to the jury and during his argument, made use of inflammatory language prejudicial to appellant. It is affirmatively shown by the record that no objection was made to the opening statement at the time it was made. It has been repeatedly held that questions of like character will not be reviewed by this court unless objection is made and exception is taken in the trial court. The remarks objected to in the argument we do not think prejudiced appellant's case. The argument is not set forth in the record, and only two objections made are stated.

Finding the evidence sufficient and no prejudicial error of law occurring on the trial, the judgment appealed from is affirmed.

BESSEY, P. J., and EDWARDS, J., concur.