# HUBERT PATTY v. STATE.

No. A-9921. April 29, 1942.

(125 P. 2d 784.)

Jerome Sullivan, of Duncan, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Hubert Patty, was charged in the county court of Stephens county along with one Ira Morgan with the crime of unlawful possession of intoxicating liquor, was tried, convicted and sentenced to serve five months in the county jail and pay a fine of $500 and costs, from which judgment and sentence an appeal has been taken to this court.

It is first contended that the trial court erred in denying the request of the defendant for a severance. The record discloses that at the beginning of the trial, before the jury was impaneled, counsel for defendant dictated into the record his motion for a severance, which motion was overruled and exception saved.

It is conceded by counsel for defendant that under the settled law of this state the granting or refusal of an application for a severance in a misdemeanor case is a matter within the sound discretion of the trial court, but it is insisted that the court's refusal in this instance constituted an abuse of discretion.

In Wheat v. State, 34 Okla. Cr. 82, 244 P. 821, the rule with reference to application for severance in misdemeanor cases is stated as follows:

"Under Criminal Procedure (section 3065, O. S. 1931, O. S. 1941, tit. 22, § 838), when two or more defendants are jointly charged with a misdemeanor, the granting or refusal of a severance rests in the discretion of the court. The exercise of such discretion is reviewable, but to be reviewed the case-made or bill of exceptions must

show an application for severance, setting out sufficient grounds therefor and supported by affidavits or oral testimony, and the application must be made before the impaneling of the jury is begun."

No affidavit nor oral testimony was offered and oral motion of counsel for defendant does not comply with the above stated rule; therefore, the court did not err in denying the request for a severance.

It is further contended that the court erred in overruling defendant's motion to suppress the evidence of the state derived through the search of defendant's automobile, and the third assignment of error is that the evidence is insufficient to sustain a conviction.

These two assignments of error will be considered together. The proof of the state established that information had been given to the officers of Stephens county that the defendant, Hubert Patty, was engaged in the liquor business. Two highway patrolmen, on the afternoon of March 12, 1940, being suspicious of the defendant Patty, followed him on the road leading out of the town of Comanche, out into the country, and saw the defendant Patty stop at the home of the defendant Ira Morgan. The patrolmen stopped their car and waited a few minutes until Patty left Morgan's house. The highway patrolmen followed him some distance before overtaking and stopping him. The testimony of the highway patrolmen as to what occurred at that point is as follows:

"Q. (By Mr. Marmaduke, County Attorney) Did you follow him? A. (By Ty Cobb, Highway Patrolman) Yes, sir. Q. How far did you follow him? A. Approximately a mile. Q. Did you finally overtake him? A. Yes, sir, after he turned south off the highway. Q. Just tell the court what occurred after you overtook Mr. Patty and had him stop his car? A. Mr. Patty stopped something like a quarter of a mile south of the highway. Mr. Neal got out, Patrolman Neal got out and went up to the right

hand side of the car. I didn't hear the conversation Mr. Patty and Mr. Neal had. Mr. Patty got out. I asked him to open the back end of his car and he opened it for me. I didn't touch the car. Other than that I don't know what their conversation was. Q. In other words, the present conversation was between Mr. Neal and Mr. Patty? A. Yes, sir. Q. Was that the only conversation you had with Mr. Patty? A. Yes, sir, at that time. Q. Did you find anything in the back end of the car? A. No, sir. Q. Was anything found there in the car by Mr. Neal? A. Yes, sir, he found some whisky in the car. Q. You know where the whisky was? A. One pint in the glove compartment and a package was under the seat or on the floor. Q. (By Mr. Sullivan, Attorney for Defendant) Mr. Cobb, did you officers have a search warrant for the person of the defendant Patty? A. No. Q. (By Mr. Marmaduke) Now this whisky that was in the front part of the car was that in plain sight? A. The whisky was on the front under the driver's seat. I didn't see it. Mr. Neal got it. * * * Q. (By Mr. Sullivan) When you officers drove up there, did you arrest him? A. No, sir. Q. Did you see any whisky before you stopped there? A. No, sir. Q. Did you when you went around the car, when you opened up the back end did you see any? A. No. Q. You never saw any whisky at all? A. I saw the pint Mr. Neal got out of the glove compartment. Q. Didn't you see it before then? A. I saw him get it. Q. Did you see the whisky before he opened the glove compartment and took it out? A. No, sir. Q. Did you see any whisky any place else before they took it out of the car? A. No, sir."

The other highway patrolman testified as follows:

"Q. (By Mr. Sullivan, Attorney for Defendant) Was he driving a coupe automobile? A. Yes, sir. Q. Was the glasses up? A. The right glass wasn't up. The left could have been. Q. You sure about that? A. Yes, sir. Q. When you stopped him there you got out of the car, walked down and did you open the door of his car? A. No, sir, he didn't open the door. Q. I said, 'Did you open the door of his car'? A. I opened the left door. I don't believe

I opened the right door. Q. You opened the left door of the car? A. Yes, sir. * * * Q. Didn't you first open the back end of his car up? A. No, sir, Cobb had him to open the back end. Q. The other officer asked him to open the back end of his car? A. He consented to. Q. Did he say open the back end up? A. No, sir. He asked him to open the back end and he did. Q. Up until the time you stopped him you didn't see any whisky, did you? A. No, sir. Q. He hadn't violated any law in your presence, had he? A. No, sir. Q. You officers drove up and asked him if he had any whisky and he told you he had some in the glove compartment. You hadn't seen any up until you asked him, had you? A. No, sir. Q. You hadn't seen any whisky in the car at the time you first asked him if he had any, had you? A. No, sir. Q. And when he told you he had a pint in the glove compartment you opened that up, didn't you? A. No, sir. Q. You had a pistol on you at that time, didn't you? A. Yes, sir. Q. You had your uniform on, didn't you? A. Yes, sir. Q. Didn't you tell him you was an officer? A. No, sir. Q. He could see that, couldn't he? A. I presume so. Q. Both of you had your uniforms on? A. Yes, sir. Q. And then after you opened the car and opened the glove compartment you saw a package on the floor? A. No, sir. Q. When did you see the package? A. When I walked on the right I was standing facing his car and could see this package under his feet and walked around and got it out. Q. What could you see in that package? A. It lay there and looked like pints of whisky. Q. Was it in a sack or paper? A. It was wrapping paper. Q. Wrapping paper? A. Yes, sir. Q. You couldn't see inside of the package? A. No. Q. And you thought it was whisky? A. Yes, sir. Q. And that is the reason you took it and opened it? A. I opened it after I got out. Q. He didn't consent to your taking it, did he? A. He didn't object to it. Q. I know he didn't object. You had your pistol on too, didn't you? A. Yes, sir. Q. He never did tell you to take it, did he? A. No. Q. And he never did tell you to open the car pocket door, did he? A. No, sir. Q. And then you arrested him after that, didn't you? A. Yes, sir, that's right."

After the highway patrolmen had arrested the defendant Patty, they took him to the town of Comanche and turned him over to officers there and gave the officers information as to what had transpired. That night four of the officers of Comanche county, armed with a search warrant, proceeded to the home of Ira Morgan, made a search of his premises and found in a cache in the house 90 pints of whisky. Two automobile license tags were found in the cache with the liquor. The proof showed that one of these tags was issued by the county assessor at Wichita Falls, Tex., in the name of the daughter of the defendant Patty for the automobile which Patty was driving at the time he was arrested. Several of the pints of whisky found at Morgan's home were of the same brand as the six pints of whisky found in the automobile which was being driven by Patty.

The defendant was not charged with possession of the six pints of whisky which were found in his automobile, but is charged solely with the possession, jointly, with Ira Morgan, of the 90 pints found at Morgan's house.

The defendant Ira Morgan testified that the whisky was his and that Hubert Patty had no interest in it. The defendant Patty did not testify. The jury gave Morgan the minimum punishment of 30 days in the county jail and a fine of $50, and no appeal was taken by Morgan from that verdict.

If we were to assume the validity of the search of defendant's automobile and the admissibility of all the evidence offered by the state, it is doubtful if this conviction could be sustained. The proof of the state showed some very suspicious circumstances, but hardly enough to prove the defendant's guilt beyond a reasonable doubt.

It is our opinion that the search of defendant's automobile by the highway patrolmen was an unreasonable and unlawful search and that the evidence obtained by reason of this search was inadmissible against the defendant. This court has held in a great number of cases that the search of an automobile without a search warrant and not as an incident of a legal arrest, but upon a mere suspicion of the commission of a misdemeanor, is a violation of article 2, sec. 30, of the state Constitution, and that the evidence obtained by such unlawful search is inadmissible against the defendant. Whitford v. State, 35 Okla. Cr. 22, 247 P. 424; Bowen v. State, 50 Okla. Cr. 36, 295 P. 623; Mosier v. State, 59 Okla. Cr. 106, 56 P. 2d 908; Lamb v. State, 59 Okla. Cr. 360, 60 P. 2d 219; Bush v. State, 64 Okla. Cr. 161, 77 P. 2d 1184; Ketcham v. State, 63 Okla. Cr. 428, 75 P. 2d 1159; Hoppes v. State, 70 Okla. Cr. 179, 105 P. 2d 433, 434.

In the case of Hoppes v. State, supra, it is stated:

"Manual custody or restraint is not essential to the effectuation of an arrest, if the person claiming to have been arrested submits to a manifestation or claim of authority to make the arrest, and an expression of intent to execute such authority.

"An unlawful arrest may be effected without manual seizure or touching of the subject of the arrest, such words and conduct by a known officer as given reasonable ground for belief on the part of the subject that the officer has present intention to make the arrest, and submission on the part of the subject in good faith, and under the belief that she has been arrested or will be arrested immediately, is sufficient.

"Search implies an invasion and quest, with some sort of force, either actual or constructive.

"A 'search,' within constitutional immunity from unreasonable search and seizure, implies a quest by an offi-

cer of the law acting on the things themselves, which quest may be secret, intrusive, or accomplished by force.

"The search of defendant's automobile without a warrant of arrest, or search warrant, or knowledge of the officers that it contained intoxicating liquor, following her unlawful arrest, held to be an unlawful and unreasonable search, requiring exclusion of evidence obtained thereon in prosecution of defendant for unlawfully transporting intoxicating liquor."

In that case the facts were more favorable to the prosecution than they are in the instant case, as the officers had a search warrant for the premises of the defendant Hoppes, but did not have a search warrant for the automobile which she was driving. The officers had been to the defendant's place of business, found no liquor, and had stopped at a filling station nearby when the defendant Hoppes came by in her automobile. The officers started following the defendant's car and stopped her after she had driven several blocks. A search of the car disclosed a quantity of liquor. In the body of the opinion by Judge Doyle, it is stated:

"Counsel for the state in their brief argue that it makes no difference whether an attempt to search began or a search began before the defendant's car was stopped, because when the officers went to the side of the car before any actual search, or before any arrest was made, the defendant told deputy sheriff, Porter, she had a load of liquor and was trying to get away with it, there had been no arrest up to that time. And if the officers had acted illegally in pursuing her, then the illegal acts of the officers may be separated from their legal acts, and they had the right, after being informed by the defendant that the offense was being committed by the defendant, to look into the car and see the whisky, and arrested the defendant.

"It is also urged that the statement of the defendant was equivalent to the officers seeing the offense com-

mitted in their presence; therefore it makes no difference whether under the theory of the law the search had been begun before the officers stopped the defendant's car.

"With this contention we cannot agree. In our opinion it is immaterial whether or not any verbal admission was made by the defendant following her arrest, if in fact the defendant was not committing an offense in the presence of the officers before she was arrested. If the arrest was unlawful any verbal admission, if any, made by the defendant following such arrest, was incompetent and inadmissible on a motion to suppress the evidence."

To sustain the contention of the state herein would be to overthrow a long line of decisions hereinabove cited and which have been uniformly followed by this court in cases where the facts are similar to those herein.

The testimony of the officers herein is to the effect that they suspicioned that the defendant was transporting intoxicating liquor in his automobile and they followed him for the purpose of overtaking, stopping and searching his automobile for intoxicating liquor. They stopped the defendant's car and got out of their car to search the defendant's car. There is a dispute in the testimony as to whether the defendant said he had part of a pint in the glove compartment, but under the other undisputed facts, we think it is immaterial whether this statement was made by the defendant.

With the evidence obtained by this unlawful search eliminated, there is not sufficient evidence to connect the defendant with the possession of the 90 pints of liquor found in Morgan's house. With this conclusion established, it becomes unnecessary for us to discuss the various other assignments of error presented by counsel for defendant.

For the reasons hereinabove given, the judgment of the county court of Stephens county is reversed and the

case is remanded with instructions to dismiss the action against the defendant, Hubert Patty.

BAREFOOT, P. J., and DOYLE, J., concur.