### Ex parte ADAMS.

No. A-11418.   Dec. 6, 1950.

(225 P. 2d 385.)

W. N. Redwine, McAlester, for petitioner.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

POWELL, J. This is an original proceeding in habeas corpus wherein the petitioner seeks his release from confinement in the State Penitentiary, at McAlester.

We have studied the petition and amended petition, attached to the latter being two certificates certified by the record clerk of the penitentiary and setting out the history of defendant's imprisonment covering his second and third terms, and we have considered the response and amended response of the warden of the penitentiary. The facts developed seem to be as follows: (1) That on December 30, 1924, petitioner was received at the State Penitentiary, McAlester, pursuant to a judgment and sentence entered by the district court of Washington county, committing said petitioner to said penitentiary to serve a term of twenty-five years by reason of conviction of the crime of robbery with firearms, and he was billed in as No. 14657; (2) That on May 12, 1931, petitioner was paroled by the Governor of Oklahoma and released from said imprisonment; (3) That on October 24, 1931, petitioner was again received at said State Penitentiary pursuant to the judgment and sentence of

the district court of Texas county, to serve a term of twenty-five years after conviction of robbery with fire-arms in that county, and he was billed in on this conviction as No. 24715; (4) Petitioner's parole from the Washington county conviction was revoked on October 27, 1931, three days after he commenced serving on the Texas county conviction; (5) That as prisoner No. 24715 on January 2, 1933, petitioner was again granted a parole and while out on leave of absence, said parole was revoked on March 8, 1936, and petitioner returned to the penitentiary to serve out the remainder of said Texas county sentence, but on December 21, 1949, it appears from the records of the Pardon and Parole Board, petitioner would have completed serving his Texas county sentence on January 15, 1950, so that in keeping with an existing policy, the remainder of said sentence was commuted by direction of the Governor; (6) Petitioner was thereupon rebilled and committed to complete the service of the first above-mentioned twenty-five year sentence from Washington county, which had never been satisfied; (7) The prison record as prisoner No. 14657 indicates that on January 13, 1943, parole was reinstated by Governor Phillips and that the same was revoked on March 8, 1946, but that prisoner was rebilled on December 21, 1949.

Counsel for petitioner suggests that, under the facts, the sole question to be decided is whether or not when petitioner was paroled and his parole was revoked, did he commence serving the remainder of the Washington county sentence with the Texas county sentence?

Counsel cites a number of cases from other jurisdictions to sustain his contention that the two sentences, under facts as in this case, ran concurrently. The holding in the various cases cited by counsel for petitioner

turn on the statute peculiar to the particular jurisdiction, or lack of statutory provisions. Our ruling, of course, must be governed by our statutory provisions, and previous interpretations. We find two statutory provisions. Tit. 21 O.S.A. § 61, provides:

"When any person is convicted of two or more crimes before sentence has been pronounced upon him for either, the imprisonment to which he is sentenced upon the second or other subsequent conviction, must commence at the termination * * * of the second or other subsequent term of imprisonment, as the case may be."

And Tit. 22 O.S.A. § 976, provides:

"If the defendant [shall] have been convicted of two or more offenses, before judgment on either, the judgment may be that the imprisonment upon any one may commence at the expiration of the imprisonment upon any other of the offenses."

The above statutes have been construed by this court many times. It is well settled that where a defendant is convicted on two or more separate charges that the sentences must be served consecutively and a court has no jurisdiction to provide otherwise, unless the conviction is had in the same jurisdiction and prior to pronouncement of sentence on either. And should the court fail to provide that the sentences run concurrently, then they run consecutively. Ex parte Whiteaker, 88 Okla. Cr. 258, 202 P. 2d 427; Ex parte Halbert, 45 Okla. Cr. 167, 282 P. 478; In re Davis, 78 Okla. Cr. 444, 150 P. 2d 367; Ex parte Robnett, 69 Okla. Cr. 235, 101 P. 2d 645; In re Flowers, 71 Okla. Cr. 330, 111 P. 2d 509; Ex parte Gilbert, 52 Okla. Cr. 260, 4 P. 2d 695; Ex parte Bell, 34 Okla. Cr. 354, 246 P. 893. And sentences imposed on defendant by courts of different jurisdictions cannot be made to run concurrently. Ex parte White,

50 Okla. Cr. 163, 296 P. 756; Ex parte Hudson, 44 Okla. Cr. 14, 279 P. 711.

It is also well settled that sentences should be served consecutively in the order of imposition, and that where a penalty is imprisonment, the sentence may be satisfied only by suffering of the actual imprisonment imposed. Ex parte McCollum, 90 Okla. Cr. 153, 212 P. 2d 161; Ex parte Pierce, 88 Okla. Cr. 150, 200 P. 2d 777; Ex parte Ridley, 3 Okla. Cr. 350, 106 P. 549, 26 L.R.A., N.S., 110; Ex parte Eldridge, 3 Okla. Cr. 499, 106 P. 980, 27 L.R.A., N.S., 625; Ex parte Alexander, 5 Okla. Cr. 196, 113 P. 993.

In the latter case, this court said:

"The time fixed for execution of a sentence, or for the commencement of its execution, is not one of its essential elements, and, strictly speaking, forms no part of the judgment and sentence, which is the penalty of the law as declared by the court; while the direction with respect to the time of carrying it into effect is in the nature of an award of execution, so that, where the penalty is imprisonment, the sentence may be satisfied only by the actual suffering of the imprisonment imposed, unless remitted by death or some legal authority."

The Attorney General in his brief called attention to a number of the above cases and the principles of law applicable to the within case, but counsel for petitioner so earnestly argues that the sections of the statute and cases cited are not applicable to the within case, we feel impelled, at the risk of unjustifiable length, to treat in some detail the arguments advanced, particularly so in view of the great number of cases that have been filed in this court in the face of the numerous reaffirmances of the principle involved in the basic cases.

In the solution of the one issue raised by petitioner and heretofore stated, it would possibly clarify matters to first consider whether or not the time served by petitioner after the Texas county conviction was properly credited on that conviction, or whether it should have been credited on the Washington county conviction which preceded the Texas county conviction, in view of Tit. 21 O.S.A. § 61, supra, and the McCollum and Pierce cases, supra, as well as Ex parte Baldridge, 93 Okla. Cr. 1, 224 P. 2d 608, and other cases decided by this court. We conclude, as contended by counsel for petitioner, that the time served after October 24, 1931, was properly credited on the Texas county conviction, for the reason that when he commenced serving on that sentence his parole from the first mentioned sentence had not been revoked, and might never be revoked, depending on discretion to be exercised by the Governor. Okla. Const. Art. VI, § 10; Tit. 57 O.S.A. §§ 331, 332; Ex parte Butler, 40 Okla. Cr. 434, 269 P. 786; Ex parte Ridley, 3 Okla. Cr. 350, 106 P. 549, 26 L.R.A., N.S., 110.

Actually, as we have seen, three days after the Texas county conviction, the parole from Washington county was in fact revoked, and a notation was made on the warden's records: "Hold as parole violator on No. 14657", (being the Washington county conviction). Of course, if the parole in the Washington county case had been revoked prior to conviction and judgment in the Texas county case, it would have been the duty of the warden to have billed the prisoner in on the Washington county conviction, and should he have failed so to do, this court, if the matter was properly presented, would have so directed, and the prisoner ordinarily would have been required to have first served that portion of the Washing-

ton county conviction that had not been completed. Ex parte Baldridge, supra.

Counsel for petitioner argues:

"If the Governor wanted Adams to serve out his first sentence he should not have revoked his parole until his second sentence was served, then when the parole was revoked he would commence serving the first sentence. * * * A parol is a suspension of the sentence and when the parole is revoked the parolee is in the same condition as he was before the parole was granted. * * * When his parole was revoked, being booked on the second sentence and in the penitentiary at the said time, he commenced serving both sentences concurrently. The first sentence was not postponed and there was no authority of the warden, or any other ministerial officer, to postpone said sentence until Adams had served out the second sentence."

The only Oklahoma case cited by counsel to support his position is that of Ex parte Ridley, supra.

We do not find the case cited to support counsel's position. That case upholds the Governor's exclusive authority under the Constitution, (Art. VI, § 10) to pardon a convict, to parole a convict, to provide terms of parole, to commute a sentence, and upholds his power to revoke paroles, even after the time the sentence would have ended but for the suspension thereof by parole. The case defines a parole, as follows:

"A 'parole,' as the term is used in criminal law, may be defined as the release of a convict from imprisonment upon certain conditions to be observed by him, and a suspension of his sentence during his liberty thus granted."

And as we have seen, counsel argues that when petitioner's parole was revoked he then being incarcerated in the State Penitentiary, he automatically began serv-

ing his first sentence along with his second sentence. Ordinarily, he would have commenced serving his first term on revocation of the parole, except that in this case an intervening event had taken place between the time of the parole in question and the revocation, an event that was created solely by the misconduct of the petitioner, and being his additional act of robbery with firearms for which he had been convicted and sentenced prior to the revocation of the parole. From the authorities heretofore cited it has been demonstrated that the district court of Texas county did not have jurisdiction to have provided for the sentence imposed to have run concurrently with the sentence imposed on petitioner by the district court of Washington county. The sentence had to be suffered by the prisoner, unless he was paroled by the Governor or sentence finally commuted or pardon granted. Likewise, the sentence in the Washington county case had to be suffered by the petitioner, unless paroled by the Governor or sentence finally commuted or pardon granted.

The petitioner may not be relieved of serving the unexpired part of the original sentence by reason of his subsequent misconduct for which he was penalized. The payment of the latter or intervening debt did not pay the prior separate debt. The fact that the Governor did not wait for the second sentence to expire before revoking the parole in question is of no benefit to petitioner. Though final action would be solely within the discretion of the Governor, justice would demand either a determination that the terms of a parole had or had not been broken. After a Governor determines that the terms of a parole have been violated and that the parole should be revoked, to defer action for an indefinite future would be the acme of vacillation. Administrative

efficiency would dictate that the decision and action was personal for the incumbent in office, and not for a successor, as would be the situation in a case as here, if petitioner's theory was adopted.

The effect of the revocation of the parole in this case was that petitioner serve out the remainder of the Washington county sentence, and that would be accomplished as speedily as circumstances might permit. There are a number of intervening factors that might be imagined that might defer the actual recommencement of service of sentence in particular case after revocation of parole, such as being a fugitive, being incarcerated in a Federal prison, or the prison of another state, or, as here, serving a sentence in an Oklahoma penitentiary commenced during parole by reason of some other conviction. The Governor's constitutional authority with reference to the persons convicted of crime is set out in Const. Art. VI, § 10, supra. It is obviously falacious to argue that the action of the Governor recited amounted to providing that the sentences in question should run concurrently, when he clearly never intended to bring about such a result.

See Ridley, 1910, Eldridge, 1910 and Alexander, 1911, cases, supra. This court has by numerous decisions adhered to the principles of law therein announced and heretofore quoted. A review of two cases reaffirming the principle announced in these cases should be helpful in eliminating any doubt as to the applicability of the principle to the facts in the within case.

In the recent case of Ex parte Grimes, 92 Okla. Cr. 87, 221 P. 2d 679, the facts are quite similar to the facts in the within case. On November 17, 1945, the prisoner was sentenced by the district court of Osage county

to serve a term of two years imprisonment in the State Penitentiary on conviction of burglary, but on June 19, 1946, the prisoner was released from the penitentiary on parole and while on parole and on May 26, 1947, said Grimes was arrested, charged with two separate crimes of forgery in the second degree. He pleaded guilty in both cases and was sentenced to serve a term of five years imprisonment in each case, the sentences to run concurrently. Said Grimes was thereafter committed to the penitentiary and was by the warden "booked" on the forgery conviction. After his conviction on the forgery offense, as in the present case, the prisoner's parole was revoked, and the record clerk at the penitentiary, where the prisoner was listed to serve the five year concurrent sentences for forgery, made a notation upon the prison record that at the expiration of said sentence the prisoner was to be held as a parole violator on No. 46698, the burglary conviction.

It was contended by counsel in the Grimes case that the warden did not have authority to book the prisoner upon the second charge, until he had completed serving his term in prison on the first charge and that if he had been given proper credit for the time which he had served since his recommitment the two-year sentence for burglary would have expired. It was further contended that the concurrent five-year sentences for forgery were void and that therefore the prisoner was entitled to his discharge. This court held that the warden properly booked the prisoner in on the second conviction. In the body of the opinion, we said:

"An incorrect entry by the warden [where such entry might be incorrect, which was not so determined in the Grimes case] would not authorize the release of the prisoner unless it was shown that he had fully satisfied

the valid sentences which had been pronounced against him. At the time the convictions were sustained by the prisoner for the second offenses of forgery, the prisoner was legally at liberty from the penitentiary on a parole from his first conviction, and he was not listed as a parole violator until two days after judgment and sentence was pronounced upon the pleas of guilty to the charges of forgery." [221 P. 2d 681.]

In the case of Ex parte Holden, 1925, 31 Okla. Cr. 133, 237 P. 622, 623, the facts disclose that on March 11, 1918, the prisoner was convicted of manslaughter in the district court of Cleveland county, with punishment fixed at confinement in the State Penitentiary for a term of four years. An appeal was perfected to this court, and prisoner was released on bond, but thereafter and on September 16, 1918, Holden pleaded guilty in the district court of Jackson county to a charge of manslaughter in the first degree, for which he was assessed punishment at imprisonment in the State Penitentiary for a term of 99 years. A short time thereafter prisoner dismissed his appeal from the Cleveland county conviction and thereafter mandate was issued by this court ordering the sheriff of Cleveland county to enforce the penalty assessed by the district court of that county. But prisoner already being in the penitentiary, incarcerated on the intervening conviction and serving a term equivalent to the duration of his natural life, no action was immediately taken to enforce this mandate. In 1923, however, the Governor of this state issued the prisoner a parole from the Jackson county conviction and in 1934 the acting Governor issued a complete pardon, and the prisoner was released from the penitentiary. But on November 17, 1924, Holden was incarcerated in the penitentiary under authority of the mandate issued in the Cleveland county conviction. The prisoner sought a writ

of habeas corpus from this court, contending that after the issuance of the mandate by this court on the first conviction, prisoner at the time being in the penitentiary serving the second sentence, that the two sentences ran concurrently, and that, since the prisoner had served more than six years in the penitentiary on the manslaughter charge after issuance of said mandate that the four-year Cleveland county sentence was satisfied, and prisoner was entitled to his liberty. This court held:

"Impelled by the former holdings in this court in the Alexander and Eldridge Cases, the express and implied provisions of the statutes quoted [Comp. Stat. 1921 § 2774, § 2303, and § 2782; Tit. 22 O.S. 1941 § 976, and Tit. 21 O.S. 1941 § 61; 22 O.S. 1941 § 980], and what appears to be the better reasoning in the cases cited, we hold that the terms of the two sentences of imprisonment did not run concurrently, and that the petitioner will not be entitled to his liberty until after he has served the term of imprisonment imposed in the first conviction by the district court of Cleveland county, beginning after he obtained his liberty from the other sentence."

By reason of the foregoing, the writ is denied.

JONES, P. J., and BRETT, J., concur.