**Lee STEVENS and Charles Fred Mellor,
Plaintiffs in Error,**

v.

**The STATE of Oklahoma,
Defendant in Error.**

No. A–12013.

Criminal Court of Appeals of Oklahoma.

July 28, 1954.

Rehearing Denied Sept. 8, 1954.

Second Petition for Rehearing Denied
Sept. 29, 1954.

with the intent to sell, etc. The informations were filed on the 16th day of May, 1953. On the 27th day of August, 1953 the defendants waived trial by jury in each case, and elected that said cases be tried to the court, and trials were set for the 14th day of September, 1953, but were subsequently continued until the 16th day of September, 1953. When the cases were called the parties announced ready, again waived a jury, and thereupon the following stipulation was entered into:

"It is stipulated between the attorneys for the State and the attorneys for the defendants that the testimony taken in Case No. 6065 upon the charge of transporting will be the same as in Case No. 6066 charging said defendants with possession and it is stipulated that the testimony may be considered as to both cases and judgment entered accordingly."

After the county attorney had read the informations and about the time he had completed making his opening statement to the jury, relative to the facts and issues, counsel for defendants moved that the court grant a severance and that each defendant be tried separately. The court overruled the motion. The record fails to show that a written motion for severance was ever actually filed, and if so, what grounds were enumerated in support of the motion, or whether the motion was supported by affidavits attached. It is apparent that no evidence was adduced in support of the motion.

George L. Hill, McAlester, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, Presiding Judge.

Lee Stevens and Charles Fred Mellor were jointly charged in the county court of Pittsburg county in case No. 6065 with the offense of transporting intoxicating liquor, and in case No. 6066 with the unlawful possession of intoxicating liquor

The above matter must be governed by Tit. 22 O.S.1951 § 838, which provides:

"When two or more defendants are jointly prosecuted for a felony, any defendant requiring it must be tried separately. In other cases defendants jointly prosecuted may be tried separately or jointly, in the discretion of the court."

Previously hereto this court construed the above statute in connection with a prosecution for having unlawful possession of intoxicating liquor and in the case of Patty v. State, 74 Okl.Cr. 322, 125 P.2d 784 held

that a denial of a request for severance was not error where affidavits or oral testimony was not offered and the oral motion of counsel for severance dictated into the record at the beginning of trial did not contain sufficient grounds for severance. See also for detailed reasoning Steen v. State, 4 Okl.Cr. 309, 111 P. 1097; Nichols v. Territory, 3 Okl. 622, 623, 41 P. 108; Nichols v. State, 76 Okl.Cr. 178, 135 P.2d 352; Ex parte Peoples, 69 Okl.Cr. 83, 100 P.2d 295; Wheat v. State, 34 Okl.Cr. 82, 244 P. 821.

When the court overruled the motion for severance, Mr. Hill, one of the attorneys for the defendants, stated:.

"I now move to suppress any evidence that may be offered as to the finding of any intoxicating liquor or other contraband in the car at the time and place charged, car occupied by these defendants, for the reason that if such was found it was obtained by unlawful and illegal search and seizure."

■■ The record further discloses that no written motion to suppress the evidence was ever filed. It is the better practice that such motion be filed prior to the commencement of trial, and of course must be heard by the court out of the presence of the jury. And, as pointed out by the Attorney General, in considering the motion to suppress the burden is on the defendant to establish the illegality of the search. Littke v. State, Okl.Cr., 258 P.2d 211; Phinney v. State, 90 Okl.Cr. 21, 210 P.2d 205.

■ A motion to suppress is usually interposed where it is claimed that the affidavit for a search warrant is void, or that the search warrant is void, or defective. However, where the defendant, as here, interposes an oral objection to the introduction of evidence outlined by the county attorney in his opening statement, on the ground of illegal search and seizure, and again objects to the introduction of the contraband on the ground of illegal search and seizure even though the defendants offer no evidence if the evidence of the State so objected to discloses an unlawful search and seizure, it would be the duty of the court to strike from the consideration of the jury such objectionable evidence. So that in the within case, if the search and seizure was illegal it would be the duty of the court to reverse the case, as such evidence stricken would leave the State with insufficient evidence to make out a case.

Thereupon the State to make out its case produced the three officers involved in the arrest of the defendants, Sheriff Dee Sanders, and deputies P. L. Richardson and Mike Mayfield. The defendants did not testify, and offered no evidence.

At the conclusion of the evidence counsel for the defendants moved to strike all evidence obtained by way of search of the defendants' automobile on the ground that it was illegally obtained, and also demurred to the evidence. Both the motion and demurrer were overruled, and thereupon the court made findings of fact and conclusions of law as follows:

"In this case, State of Oklahoma v. Lee Stevens and Charles Fred Mellor, the court has heard the testimony which consists exclusively of the officers who made the arrest, there being no evidence offered by the defendants. At the conclusion of the State's testimony and after various motions filed by the defendants, the defendants rested without offering any testimony; I deem it necessary to make a finding of fact at this time as I am thoroughly conversant with the fact and at a later date might slip out of my mind, then I want to make this statement of facts so that if the county attorney isn't satisfied with the holding of the court he will have this record to refer to and to remind the court about at some future time. In the event the defendants are not satisfied with it, I am sure they will want to take an appeal and I would like for the Criminal Court of Appeals that reversed this court in the Saltsman case this statement of facts to refer to.

"The testimony in the case shows that Mr. Sanders, Mr. Mike Mayfield and Mr. Richardson, the sheriff and two of his deputies, had information

that Mr. Mellor, the defendant Charles Fred Mellor, had gone to Fort Smith for the purpose of attending a football game; however it creeps into the evidence that they either knew or had information to think that Mr. Mellor had gone there for the purpose of bringing back or perhaps might bring back a load of liquor. They testified they didn't know that Lee was involved in the set-up. They went here and there around town and they do nightly, and I want to commend the officers for their rigid enforcement of the law and for the fact they frequently go out at night to observe, to see whether law is being violated.

"No question in the court's mind and the court would have to find, as a matter of fact, that these officers went over to North Town and parked their cars just north of the signal light on North Main which by the way is Highway 69, I believe. After conferring with the attorneys and witnesses, I find that the court was in error as to the place they were parked, apparently they were southeast of the signal light. I believe the court has already found they were there for the purpose of apprehending or waiting for the defendant Charles Fred Mellor. Now, while they were there it seems that Mr. Richardson had sold this car to Mellor and was the only one of the officers who knew the car and that while they were there waiting, this particular car showed up coming south and don't think there is any question but what the evidence shows conclusively that they run a red light and that the car from the time they ran the red light until they were stopped was running at a speed of 55 to 60 miles an hour. Now clearly, there was a violation of law in the presence of these officers for which they had a right to and did arrest the defendant Lee Stevens. Up until the time the car was stopped they knew nothing of Mellor being in the car. There is some testimony and quite a bit of testimony as to what the officers would have done

if he hadn't of run a red light or hadn't violated the law in their presence. The gist of that evidence, the court finds, is that it was their intention if the car had passed observing the law they would have followed the car in an attempt to locate where the liquor, if they had liquor, was stached or unloaded.

"Now one of the officers, I believe Mr. Richardson, testified that if they had seen the liquor when they were following the car or if that had been brought to their attention they no doubt would have arrested him. The evidence seems to be so far as their intention was that they intended if there was a violation of law, if liquor was being transported, that no arrest or attempted arrest would be made until there was a violation of law in their presence.

"But getting back to the main thread of the story, there was a violation of law in their presence, they had a perfect right and did pursue the car. When the car was stopped the sheriff, who seemed to be in command, immediately notified Lee Stevens that he was under arrest for speeding and for running a stop sign and later on it seems that inquiring of Mr. Stevens about his drinking he told him that he was also under arrest for driving while drunk or at least at a later time a charge of drunk driving was filed.

"Now, up until that time, until they looked in the car, they didn't know Mellor was in the car. They had a right to search the car when they found Mr. Stevens violating the law. He was in charge of the car, driving and operating it. The evidence shows conclusively that after he was placed under arrest that the car was searched and when liquor was found, Mr. Stevens in the presence of Mr. Mellor stated that the car belonged to Mr. Mellor, and not to Mr. Stevens.

"Now, it is true, as the attorneys suggest, there is no evidence showing

who the liquor belonged to, but the evidence is conclusive that the two of them, the defendants Stevens and Mellor, had the liquor in charge and were transporting liquor. Now as to the ownership, neither of them has denied any ownership the possession would be prima facie evidence of possession and ownership by them and the court will so find.

"After the defendants were arrested and on their way to the jail there was some conversation about where they got the liquor and while it isn't altogether clear the court can gather from the evidence that the liquor was brought back from Fort Smith. The type of the liquor being pints and I believe there is 18 pints and it seems as I remember there was 46 bottles or packages of liquor, is that correct, Mr. Neece? The court will find there was 18 pints of mixed liquor in the car that had formerly belonged to Mr. Mellor who had transferred the title to the car to his mother and who was in possession of the car prior to this time, at this time and subsequent to this time.

"No question but what the evidence shows without contradiction that Mellor was asleep in the car and as far as the evidence discloses and the court will find that he wasn't aware of the violation of law, however the man operating the car was evidently his agent or was operating with his knowledge and consent and the court must find that both of them had knowledge of the fact that there was liquor in the car and the violation of the law authorized the stopping of the car and the arresting of the driver, Lee Stevens, and that is what was done.

"Now the evidence shows that no arrest was made of Mellor until after a search of the car and until after Mr. Stevens had volunteered the statement in Mellor's presence that it was Mellor's car. The court will make a finding of fact that they were parked southeast of the stop light and that the first time the defendant's car was observed or identified it was either 20 or 60 feet north of the stop light and that it came through the stop light. The court knows that the lights change there, because I pass through that way quite often. Assuming that the light was on green when the car was seen, then certainly the evidence is conclusive that the light changed to red before they passed through the light and therefore they had violated the law before any effort was made on the part of the officers there at that time to move into a pursuit. Whatever the intention of the officers in moving into pursuit they didn't move into pursuit until after there was a violation of law in their presence."

It is our conclusion that the findings of fact made by the court is supported by the evidence presented by the State. We find no reason for a further detailing statement of the evidence. Tit. 20 O.S.A. § 47.

The law of search and seizure in this jurisdiction and particularly as applied to motor vehicles, has been set out in some detail in the recent case of Brinegar v. State, Okl.Cr., 262 P.2d 464.

■■■■ Without doubt the sheriff of Pittsburg County having come into possession of information that the defendant Mellor had purchased a specific automobile from one of the sheriff's deputies, had later transferred title to his (Mellor's) mother, but was still driving the car and was to transport a quantity of liquor from Fort Smith to McAlester on a certain day, the sheriff wishing to search the car should have obtained a search warrant. That always is the surest plan to assure a legal search.

But for reasons best known to the sheriff, he had decided to wait for the car and follow it to find out where the liquor, if any, would be delivered, and incidentally if he should see the whiskey he would arrest the defendant for violating the law in his presence. Such an arrest would be legal. Brinegar v. State, supra.

Here, when the defendant Mellor, or at least the car he was supposed to be

driving, was eventually seen, it was being driven at the unlawful rate of speed of 55 to 60 miles per hour and an instant later ran a red light. Without doubt the law was being violated in the presence of the officers and irrespective of what they may or may not have had in mind concerning the possible arrest of the defendant, they were authorized when they observed the car being so operated as to violate the law in the two respects mentioned, to pursue such car and arrest the driver. This the officers did. The driver was the defendant Lee Stevens.

In the Brinegar case, supra, we determined, however, that the mere fact that a motorist may violate the traffic laws in the presence of an officer, for which the officer may arrest the driver, does not ipso facto give the officer a right to search the motor vehicle. This for the reason that there could ordinarily be no evidence contained in the motor vehicle which could afford proof that the motorist ran a red light, or speeded. The search is limited to a quest for evidence to support the crime charged or to be charged. Brinegar v. State, supra.

The officers would have a right, however, if, from the situation that would confront them it was deemed necessary in order to prevent the escape of the prisoner, or for their own protection, they might search the motorist and all persons in his car; and might search the glove compartment of the car and any place convenient for the concealment or carrying of weapons, for the purpose of obtaining such weapons. In the Brinegar case in such process the officers incidentally discovered a partially filled bottle of whiskey in the glove compartment of Brinegar's car, and we held that they were thereby entitled to search the entire car for additional evidence of possession or transportation of intoxicating liquor.

In the within case, however, the record discloses that the defendant Mellor was asleep and that the sheriff was well acquainted with Stevens, the driver, and apparently was not fearful that either of the defendants would attempt to escape or

that there was need for search for weapons as the record does not disclose that the defendants were searched for weapons.

The record does show, however, that when the officer arrested the driver of the car, Stevens, and had him get out of the car the officers discovered; that Stevens had the odor of whiskey about him and staggered, so that the sheriff advised the defendant Stevens that he was arresting him for drunk driving. Such a charge was filed. The outcome is not disclosed by the record. This situation justified the officers in searching the car for further evidence to support the drunkenness charge. They found a pint bottle containing about an inch of whiskey on the floor of the car, under the front seat. They then got the key to the turtle back and discovered the whiskey forming the basis for the two charges involved herein.

The defendant Stevens in the presence of his codefendant Mellor advised the officers that the car belonged to Mellor, but that he was the driver. For such reason, and under the state of the record, we find no error. And in the absence of evidence to the contrary, the court did not err in overruling the demurrer interposed by the defendants.

The within case is readily distinguishable from Hoppes v. State, 70 Okl.Cr. 179, 105 P.2d 433, and the other cases from this court cited by the defendants, and we do not find it necessary to point out why. A reading of the Brinegar case should show why.

The downfall of the defendants in the within case was the fact of intoxication of the driver of the car and the whiskey bottle on the front floor of the car.

The court in the transportation case, No. 6065, adjudged that each of the defendants pay a fine of $200 and the costs, and each to serve 60 days in the county jail.

The court then adjudged:

"In case No. 6066 it is the further order and judgment of the court that you and each of you be sentenced to pay a fine of $200 and costs, and serve a term of 60 days each in the county jail, this

second sentence to run concurrently in each case; that is, Mr. Mellor and Mr. Stevens, concurrently with the sentence in the first case, and that the fine and costs in the second case will not have to be paid."

The trial court had previously said:

"I don't feel that you gentlemen deserve $400 and four months in jail, neither do I feel that you deserve $50 and 30 days in jail."

He then entered the above judgment.

 The court did not attempt to suspend the sentence in case No. 6066, but did attempt to have it run concurrently with the first case. While two sentences imposed at the same term of court may run concurrently, Tit. 21 O.S.1951 § 61, and Tit. 22 O.S.1951 § 976, In re Flowers, 71 Okl.Cr. 330–335, 111 P.2d 509; Ex parte Adams, 93 Okl.Cr. 95, 225 P.2d 385, so far as the fine and costs assessed are concerned, such would have to be paid, even if it was an effort to suspend, the court could not suspend a portion of the sentence.

Respecting the thoughts of the court as to the assessment of punishment attempted by him, the judgment in case No. 6065, the transportation case, is affirmed as to the amount of time to be served in the county jail by each of the defendants, to-wit: 60 days, but the fine of each is reduced from $200 to $150; and in case No. 6066, the possession case, the same is affirmed as to each of the defendants as to the amount of time to be served, to-wit: 60 days, but that the fine be reduced from $200 to $50 each, the sentences to confinement in jail in both cases to be served concurrently, but the total fine of $200 each and costs to be paid.

As thus modified, the judgments appealed from are affirmed.

JONES and BRETT, JJ., concur.

### On Rehearing

BRETT, Judge.

As indicated in the original opinion this case is clearly distinguishable from the Brinegar case, 262 P.2d 464, and the cases relied on by the defendant. Here the undisputed record is that the officers did not intend to conduct a search when they were laying in wait but only that they intended to follow and determine where the whiskey was to be put so that they could then seize it in a lawful manner by search warrant. Moreover the record shows that they saw the defendant's car run the red light, driving at an excessive rate of speed, and the officers were required to reach a speed of between 65 and 70 miles an hour to overtake the defendant and after overtaking them the officers followed the defendant at a speed estimated to be 56 to 57 miles an hour, in a 35 mile speed zone. During the chase the undisputed record discloses that the officers saw the defendant go off the pavement, pull back on and over and across the center line, forcing a semi-trailer off the road and a little later run off the pavement again. Then it was the sheriff said he put the red light on them and sounded his siren. The defendant Stevens who was driving stopped and the sheriff arrested him for running a stop light and reckless driving. To this point the foregoing infractions constituted violations of the city ordinances. The sheriff swore positively he would not have arrested the defendants had they not violated the city ordinances. To this point this case came within the principles of the Brinegar case, supra.

The sheriff further swore positively that he ordered Stevens out of the automobile and discovered from his breath and staggering that he was drunk. The record shows the defendant admitted that he had been drinking. At that time the sheriff said he informed the defendant he was arrested for drunk driving. Then the sheriff was entitled to search for the means by which the offense was committed, intoxicating liquor. The search disclosed a partly filled bottle and the other large quantity in the turtle back of the car. The defendant offered no proof in his own defense. The record stands uncontradicted.

We are of the opinion that the officers conducted themselves in a manner according to law and had they not so demeaned themselves in this case they would have been guilty of dereliction of duty.

POWELL, P. J., and JONES, J., concur.