**Application of Burrel Gene COOLEY for Writ of Habeas Corpus.**

**No. A–12329.**

Criminal Court of Appeals of Oklahoma.
March 28, 1956.

Marion R. Wells, Seminole, for petitioner.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for respondent.

JONES, Presiding Judge.

The petitioner, Burrel Gene Cooley, filed this original action in habeas corpus wherein he seeks to secure his release from confinement in the state penitentiary. The verified petition alleged that on May 3, 1950, petitioner was received at the state penitentiary under sentence of two years for the crime of burglary in the second degree and on March 8, 1951, petitioner was granted a parole from that institution and placed under the supervision of Sam Montgomery of Sayre, Oklahoma, who acted as the petitioner's parole officer. That on May 15, 1952, petitioner was released by the parole officer from further supervision. That thereafter petitioner, having been convicted in the District Court of Texas County for the crime of burglary in the second degree, was received on October 7, 1952, at the state penitentiary to commence serving a sentence of five years pronounced against him by the District Court of Texas County. That with good time allowances received by the petitioner in the penitentiary he was due to be discharged from said sentence on January 16, 1956.

Petitioner further alleged that on October 20, 1952, the Governor of Oklahoma made an order purporting to revoke petitioner's parole and that in said order of revocation it was directed that he serve his original sentence of two years for burglary in the second degree and that he is now being held by reason of the attempted revocation of his parole for the purpose of completing his sentence on the burglary charge from the District Court of Lincoln County, he having already successfully completed the serving of his sentence for burglary from the District Court of Texas County.

It is contended by petitioner that the act of the Governor in revoking petitioner's parole was void and contrary to law for the reason that the Pardon and Parole Officer and the Governor had failed to comply with Title 57 O.S.1951 § 332.10 which provides:

"Upon completion of the terms and conditions of a parole, the Pardon and Parole Officer shall call such fact to the attention of the Pardon and Parole Board who in turn shall immediately make their recommendation to the

Governor as to whether the parolee is entitled to a pardon."

It was contended by petitioner that when he was released from the supervision of the district parole officer on May 5, 1952, it was the mandatory duty of the Pardon and Parole Board to certify to the Governor that petitioner had satisfactorily completed the terms and conditions of his parole and that he was entitled to a pardon. ·

The Attorney General in his response alleges that the petitioner is being lawfully held in the penitentiary by reason of an unsatisfied judgment and sentence from the District Court of Lincoln County and that the earliest period whereby he would be eligible for a release from the penitentiary with time off for good behavior would be July 30, 1956.

While the contention of the petitioner is unique, it is not altogether without merit. However, a study of the question reveals that it is based upon two fallacies: 1. That petitioner had completed the terms and conditions of his parole. 2. That it was mandatory on the Governor to grant him a pardon after it was certified to him by the Parole Board that the prisoner had satisfactorily completed the terms and conditions of his parole.

At the hearing before this court we were furnished with a copy of the parole issued to the prisoner which was filed in the office of the Secretary of State. In said parole the following provision appears:

"It is further ordered That said Parole is made subject to and conditional on faithful performance by such inmate of all the regular or special rules or conditions and rules appearing on the face and back hereof, and of any other regular or special rules or conditions which the Pardon and Parole Board or the Pardon and Parole Officer may at any time, or from time to time, at their discretion impose."

On the back of the parole are twelve rules and conditions of the parole which the parolee signed and agreed to as part of the conditions for his release from the penitentiary. Paragraph number eight provides:

"I understand that I am to remain on Parole until such time as my Parole is revoked or I may be granted a pardon by the Governor of the State of Oklahoma."

It is also provided:

"I further distinctly understand that, while on parole, I must obey the laws of any State or City to which I am paroled or transferred, and all of the laws of the United States, as well as abide by the aforesaid general and special conditions and any other that may be imposed on me in the future. I further understand that the continuation of my parole depends entirely on my conduct, and that I must be an upright and law abiding citizen and must shun evil associates, associations and places. I am also fully aware that, under the law, the Governor, where recommended by the Pardon and Parole Officer, may amend or revoke my parole at any time and *for any reason by him deemed sufficient,* and that should I fail in my duty and violate the laws or the rules hereinabove set forth, I am subject to be apprehended and returned to prison to serve the remainder of my sentence."
(Italics supplied.)

Other terms and conditions of the parole related to reports to the Parole Advisor to be selected by the Pardon and Parole Officer and for the monthly reports to the Pardon and Parole Officer and also contained many other terms and conditions of the parole and rules governing the conduct of the paroled prisoner. By the express terms of the parole accepted by the prisoner it was provided that he would remain on parole until such time as the parole was revoked or until he was granted a pardon by the Governor. The assumption in the petition that the prisoner was no longer on parole is an error because of the express wording of the parole. It is true according to the evidence before us he had been released from field supervision but that alone does not mean that he has completed the terms and conditions of his parole. It simply meant that he had progressed so far in his rehabilitation program that it was no longer necessary to have him under strict field supervision. However, he was considered a parolee by the Pardon and Parole Office and as such was required to make monthly re-

ports to the Pardon and Parole Office under the express terms of the parole which were accepted by the prisoner.

The second fallacious assumption upon which the prayer for relief was based is the assumption that the Governor would grant a pardon upon the termination of the parole.

The power to issue pardons is vested exclusively in the Governor. Article 6, Section 10, Oklahoma Constitution. While the Pardon and Parole Board may recommend persons they think eligible for pardons, their report thereon is advisory only and not binding on the Governor. Neither the Legislature nor the courts may usurp or change this constitutional provision. Ex parte Swain, 88 Okl.Cr. 235, 202 P.2d 223.

It was further contended that the attempted revocation of the parole was without notice to the petitioner and therefore was illegal and void. In the case of In re Edwards, 79 Okl.Cr. 259, 154 P.2d 105, this court held:

"A convict was granted and accepted a parole which expressly provided that the Governor might revoke the same and remand the party to prison for a violation of the conditions, or 'for any other reason by him deemed sufficient.' Held, the Governor may order the convict to be so remanded without notice to him, and without giving him an opportunity to be heard."

In the case of Ex parte Adams, 93 Okl.Cr. 95, 225 P.2d 385, it was held:

"Where A is convicted of robbery with firearms and after serving a portion of the sentence imposed is paroled and while on parole is convicted of a subsequent armed robbery committed while out on parole, and is returned to the penitentiary and is booked in on the second sentence rather than the first, held such was proper in that the parole from the first conviction had not at the time been revoked."

The writ of habeas corpus is denied.

BRETT and POWELL, JJ., concur.