## Ex parte ERVIN.
### No. A–12016.

Criminal Court of Appeals of Oklahoma.
Feb. 3, 1954.

Forest Ervin, pro se.

Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for respondent.

POWELL, Presiding Judge.

Petitioner is incarcerated in the State Penitentiary at McAlester. He seeks a writ of habeas corpus from this court. The State has filed a demurrer to the petition, which for the purpose of the motion admits as true the allegations of the petition.

The following is a substantial summary of the matters complained of:

Under date of March 4, 1949 there were three cases pending against defendant in the district court of Oklahoma county, wherein petitioner was charged with crime against nature; that defendant had been in Oklahoma county jail for 59 days awaiting trial; that the county attorney agreed with accused that if he would plead guilty

in one of the cases and further agree to a surgical operation for purpose of emasculation, the other two charges would be dismissed and that petitioner would be given credit for his 59 days jail time, and a parole would be recommended. That accordingly petitioner did plead guilty to the charge, and the court assessed punishment at a term of ten years imprisonment in the State Penitentiary, being the maximum sentence under Tit. 21 O.S.1951 § 886; that consideration was not given to the 59 days spent in jail. Petitioner further alleges that he was not removed to the State Penitentiary until 202 days after the sentence was imposed by the court, but that when he did get to the penitentiary he consented to and underwent the operation for removal of his male glands, or in other words, to emasculation, whereby he alleges that he can no longer commit the crime for which he was charged, and where he entered a plea of guilty.

Petitioner further alleges that the judge sentencing him, Hon. Baker H. Melone, in addition to Hon. Granville Scanland, County Attorney, recommended him to the State Pardon and Parole Board for consideration for parole. Also Russell B. Halloway, former assistant county attorney of Oklahoma county under date of July 23, 1951 wrote the Pardon and Parole Board admitting that he did make an agreement with the prisoner substantially as alleged, except he did not mention the 59 days jail time. Copies of the letters in question are attached to the petition.

Petitioner alleges that he has been unable to the present time to obtain a parole, but that should he be given credit for his jail time prior to trial, as he was promised, and the 202 days jail time after sentence, his sentence to the penitentiary would have already expired, but that should he not be allowed the jail time prior to judgment and sentence in his case, even then his time would expire on March 1, 1954, if allowed the jail time served after judgment.

In a writing by the prisoner in the nature of a brief in support of his petition, he argues that it was through no fault of his that he was apparently forgotten and not transported on to the penitentiary within a reasonable time after sentence.

■ It is apparent that petitioner was not represented by an attorney, or if so, that he was grossly negligent in his duties in not applying to the trial court for an order directing the transmission without further delay of the prisoner to the place designated for the serving of imprisonment. Failing to obtain such an order, application could have been made to this court. Chance v. State, 58 Okl.Cr. 312, 52 P.2d 1087.

This court under the circumstances in this case is not disposed to charge to the defendant the laches of the officials. He had agreed to undergo an operation that few persons with average intelligence would normally agree to. His sexual predilection or condition, an abnormal and detestable one, could only be accounted for by reason of some mental quirk.[1]

---

1. See "Who Are The Guilty? A Study of Education and Crime", by David Abrahamsen, M.D., Rinehart & Co., Inc., New York. This book was written under the auspices of the New York State Department of Mental Hygiene where Dr. Abrahamsen was made director of research project on sex offenses. It might provoke study if the publisher's foreword to the book was quoted: "In the America of 1950 a crime was committed every 18 seconds. Furthermore, reports the Federal Bureau of Investigation, this figure is increasing every year. Who is responsible for the enormity of our crime rate? Society? The home? The school? The delinquent?

"In this authoritative book, an outstanding psychiatrist in the field brings together for the first time all the available information on the subject and provides the answer, which is—all four. In addition, he tells what each—society, the home, the school, the delinquent—can do about it.

"Who Are The Guilty? presents a down-to-earth, clear-cut course of preventive action. First Dr. Abrahamsen asks the vital question: What is a criminal? Using numerous case histories, he demonstrates the close relationship between mental illness and delinquency, and points out how such illness can be remedied by special psychiatric treatment

If this court had the authority, the writ would be granted, because no matter how guilty a person may be who is charged with or convicted of crime, he is entitled to fair, honest and conscientious treatment by the officers and the courts. By reason of the apparent oversight, the petitioner was kept in jail an unreasonable time after sentence before he was transported to the State Penitentiary. He has not received fair treatment, in spite of the fact that, as pointed out by the Attorney General, he could have no doubt prevented this by application to the trial court, or failing there, to the Criminal Court of Appeals. A person in his mental state and without counsel should not be expected to take advantage of the measures that a normal person would.

■■■ Of course any agreement by a county attorney to the effect that an accused, if he would plead guilty to the crime charged, would receive credit for jail time would not be binding on the court, and the court could not in so many words give credit for jail time, though in assessing the punishment where jury waived, or such would be left to the court, he might assess a lighter sentence in that many factors might enter in the conscience and thinking of the court in meting out justice. See Syllabus 2 by the court in State ex rel. Waters v. Lackey, Okl.Cr. 1953, 257 P.2d 849; Ex parte Pruitt, Okl.Cr., 244 P.2d 594.

■■■ This court has many times said that in an application for a writ of habeas corpus by an inmate of the State Penitentiary under commitment on a plea of guilty to a felony charge, the sole question is whether the judgment pronounced against the inmate was void. Ex parte Fisher, 88 Okl.Cr. 1, 199 P.2d 238, and cases cited.

■■■ Expressed in other words, we have from the beginning said that the power of the Criminal Court of Appeals to modify a sentence is limited to appealed cases, and cannot be exercised in an original habeas corpus action. Ex parte Cavers, 79 Okl. Cr. 262, 154 P.2d 106; Ex parte Walker, 84 Okl.Cr. 190, 180 P.2d 670, 671; Ex parte Scharnhaus, 87 Okl.Cr. 433, 198 P.2d 1009; Ex parte Moore, 88 Okl.Cr. 105, 200 P.2d 454.

■■■ Of course if the defendant had soon after he was incarcerated in the penitentiary sought a writ of habeas corpus, this court could have considered the question of whether the trial court properly had jurisdiction of the case, or whether or not the judgment was void, and if it should have so been determined might have sent the case back to the trial court for new trial, see In re Stevens, 81 Okl.Cr. 65, 160 P.2d 415, where the trial court, cognizant of the circumstances called to the attention of this court, might have granted the relief to which the defendant in all justice would seem entitled, and failing, on appeal this court could have modified any sentence so as to effect the relief. But at this late date such course would be useless, as the sentence as it stands would expire before relief could be afforded.

■■■ ■Under the situation now existing, the petitioner must rely on the only agency that, under the law, can afford him the relief sought, that being the State Pardon and Parole Board. Petitioner must discover the rules and regulations under which the Board functions, and seek the processing of his application in accordance. His prior application for clemency has probably been based on a plea for mercy. He has apparently sought to be given something that his record for repulsive sex offenses over the years has probably demonstrated him not entitled to receive. His history of

and proper educational measures. Analyzing the original of many emotional difficulties, he shows how preclinical signs of antisocial activity may start early in childhood and exist for years undiscovered by either parent or teacher. In addition, he devotes whole chapters to types of delinquency, sex and murder, prison treatment and rehabilitation, mental health in schools, and finally, education as a means of preventing crime.

"Who Are The Guilty? is an eloquent plea for a long-range program of education in the home and in the school—a program any intelligent reader will find vital to the health of our nation."

crime, if other than the cases mentioned, is not before us as it properly may be before the Board, but we do know that in three cases disposed of by the plea of guilty in one, if all three cases had been actually tried, petitioner might have netted thirty years' maximum imprisonment. But he was sentenced in only one case, the others being dismissed. So as for clemency, it is apparent that the Pardon and Parole Board has found nothing justifying clemency. The Board has probably given due weight to the drastic operation suffered by the petitioner, but may have at the same time considered expert treatise on the probability of the mental sex urge remaining, and the probable consequences thereof. Every case no doubt presents problems that make it different from others, and the solution of any is probably never an easy task. We have no doubt but that the conclusion has been a correct one on the basis of specifications heretofore advanced.

But an application for parole for approximately 200 days prior to the ordinary expiration of defendant's sentence, where allowance for good conduct had, and based on a moral entitlement to credit that the prisoner by the circumstances described has been deprived of, might be given consideration. We do not know. That is a straw at which the prisoner may grasp. We find the members of the Pardon and Parole Board to be highly conscientious men, and while they must be convinced of solid and substantial merit as a basis for favorable action in each case, as distinguished from sentiment, we feel confident that the incarceration in the Oklahoma county jail for the period after sentence will impress the Board as the sufferance of imprisonment, regardless of the prison designation. Prior to sentencing the prisoner was entitled to be released on bond, and such imprisonment may be charged to his failure to furnish bond, but after sentence where the judgment was entered in accordance with agreement to enter a plea of guilty, and further to undergo an operation, which would be performed at the penitentiary, and no appeal was perfected, the defendant could not be released on bond. He carried out his agreement.

Not having counsel he did not discover the limitations on the jurisdiction of the courts.

The writ must be denied on the basis of lack of jurisdiction of this court to grant the relief prayed for.

JONES and BRETT, JJ., concur.