George D. McKEE, Jr., Petitioner,

v.

Ray H. PAGE, Warden, Oklahoma State Penitentiary, and the State of Oklahoma, Respondents.

No. A–14402.

Court of Criminal Appeals of Oklahoma.

March 13, 1968.

Jim Conatser, Bartlesville, for petitioner.

G. T. Blankenship, Atty. Gen., Hugh H. Collum, Asst. Atty. Gen., for respondents.

BRETT, Judge:

This petitioner, George D. McKee, Jr., #33071, filed a petition in this Court seeking his release from confinement in the state penitentiary by writ of habeas corpus. A demurrer to the petition was filed by the Attorney General, and the case was set down for oral argument, at which time the Court requested the petitioner and the respondents to file briefs. Briefs have been filed, and have been carefully considered.

From the pleadings, exhibits and files in the office of the Department of Corrections, to which this Court has access, the following state of facts appear: This petitioner was convicted of murder in Osage County, Oklahoma in the year 1935, and sentenced to life imprisonment in the state penitentiary. He entered the penitentiary November 5, 1935. Petitioner was subsequently granted several short leaves of absence from the penitentiary, one on July 16, 1951 for sixty days, and the last one on December 18, 1951 for ninety days, both granted by Gov. Johnston Murray. On recommendation of Pardon and Parole Officer Campbell LaFlore, dated January 7, 1952 this leave of absence was revoked on that same date. The records of the State Penitentiary indicate that this petitioner was not again located until the year 1966.

During the year 1966 the petitioner was indicted by a grand jury in the state of Wyoming, charged with the alleged killing of a Wind River Indian Reservation police officer. Petitioner was, at the instigation of the United States Attorney, sent to the Medical Center for Federal prisoners at Springfield, Missouri, for examination by psychiatrists, who concluded that petitioner was not guilty of such crime, by reason of insanity at the time of the commission of the alleged offense. He was returned to the State of Wyoming.

Thereafter, on or about June 22, 1966 an application was made by the State of Oklahoma to extradite petitioner, and he was subsequently turned over to the Oklahoma authorities, and returned to the State for the purpose of serving the sentence rendered in 1935.

It is the theory of petitioner that the Pardon and Parole Board granted him a permanent leave of absence, which was in fact a release, and that the same constituted a waiver of the jurisdiction of this State at that time and any future time over the person of petitioner for the purpose of carrying out the sentence imposed in 1935.

■ The petitioner contends that he was not a fugitive from justice, and hence was illegally extradited. However, this inquiry is one of fact, to be resolved by the chief executive of the State upon which demand is made, in this case Wyoming; and the decision of such chief executive cannot be impeached unless it conclusively appears that the accused could not be, under the law, a fugitive. A convict who is on limited leave from the penitentiary and leaves the state, even if with the consent of the authorities, can nevertheless become a fugitive from justice in another state, when his leave has been revoked. See Moulthrope v. Matus, 139 Conn. 272, 93 A.2d 149, cert. den. 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. 1357.

Petitioner, in testifying before this Court stated that he paid a Pardon and Parole Officer (Campbell LeFlore, who is now deceased), the sum of $5700 for making arrangements for his permission to leave the state of Oklahoma, and that he was told by such officer that so long as he remained out of the State of Oklahoma, he would not have to return to the penitentiary, or serve any further time by reason of his 1935 conviction and sentence. (It is interesting to note that this same officer, just twenty days after the issuance of the last mentioned leave, recommended to the Governor of the State that this leave be revoked.)

■ The power to issue pardons is and has always been vested exclusively in the Governor of this State by Article 6, § 10 of the Oklahoma Constitution; and no evidence has been presented that any Governor of this State has ever granted this petitioner either a pardon or a commutation of his sentence. See Re Application of Cooley, Okl.Cr., 295 P.2d 816; Ex parte Ervin, Okl. Cr., 266 P.2d 984.

■ In this case it is not necessary to consider whether or not the State of Wyoming might properly have refused to have honored the application for requisition of McKee on the theory that he was not a fugitive. This for the simple reason that the petitioner was actually returned to the State of Oklahoma to complete serving his term of imprisonment. We are faced with the accomplished fact. The sentence against him had never been served. The Act of the Governor of Wyoming in honoring the requisition of the Governor of Oklahoma did in no way operate to void the judgment and sentence rendered against this petitioner in Osage County.

In Traxler v. State, 96 Okl.Cr. 231, 251 P. 2d 815, this Court said:

"Where a person accused of crime is held under valid process in proper form, such detention is not rendered invalid because of the illegality of the events which precede it, or which made the detention physically possible. His wrong against the State is not to be condoned because of the illegality of the means employed in obtaining custody. The means used to bring him into the State will not be a subject of inquiry."

And see Mathews v. State, 19 Okl.Cr. 153, 198 P. 112; Application of Butler, Okl.Cr., 346 P.2d 348.

Thus the manner and mode of petitioner's return to Oklahoma is not of concern to this Court, except insofar as it may affect his status now that he is back in Oklahoma. Davis v. Page, Okl.Cr., 405 P.2d 710.

In his brief the Attorney General states: "We are not faced with the situation of a petitioner who is resisting extradition and seeks to prove that he is not a fugitive from the justice of another state. (See, however, Moulthrope v. Matus [cited above] for a holding that a paroled convict who has left one state with express consent of the authorities can nevertheless become a fugitive in another state, and therefore be subject to extradition, if his parole is revoked, even if the state in which he was paroled had forced him to leave that state as a condition of his parole.) Rather, this is the situation of a petitioner who—by his own sworn testimony—states that he bought his way out of the jurisdiction of this State. Now that he finds himself back in the jurisdiction of this State, he has stated no legal cause why he should not suffer the sentence imposed upon him."

With this statement we agree.

■ In 39 C.J.S. Habeas Corpus § 39, p. 550, we find the following:

"After rendition to the demanding state, the prisoner may not be discharged on habeas corpus on the ground that he was illegally surrendered on invalid extradition proceedings, * * *."

Citing in support thereof Kuney v. State (Florida), 102 So. 547.

■ It has often been held by this Court that a judgment of conviction can only be satisfied by the serving of the sentence imposed, unless by death or some legal authority. Ex parte Eldridge, 3 Okl.Cr. 499, 106 P. 980, 27 L.R.A.,N.S., 625; Ex parte Oliver, 11 Okl.Cr. 536, 149 P. 117; Ex parte Youstler, 40 Okl.Cr. 273, 268 P. 323; Ex parte Halbert, 45 Okl.Cr. 167, 282 P. 478; Ex parte Griffen, 91 Okl.Cr. 132, 216 P.2d 597, cert. den. 340 U.S. 835, 71 S.Ct. 17, 95 L.Ed. 613; In re: Baldridge, 93 Okl.Cr. 1, 224 P.2d 608; Re: Application of Richardson, Okl.Cr., 346 P.2d 954; Ex parte Williams, Okl.Cr., 367 P.2d 514; Davis v. Page, Okl.Cr., 405 P.2d 710.

For the reasons hereinbefore stated, the petition of George D. McKee, Jr., for release from the state penitentiary by writ of habeas corpus is denied.

BUSSY, J., concurs.